462 A.2d 653

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Charles D. EMANUEL, Jr., Appellee.**

Supreme Court of Pennsylvania.

Argued May 27, 1983.

Decided July 8, 1983.

Frank T. Hazel, Dist. Atty., David E. Fritchey, Deputy Dist. Atty., for appellant.

James P. McHugh, Chester, for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case presents the question whether a district attorney's rubber stamped signature on an information meets the requirement of Pa.R.Crim.P. 225(b) that "The information shall be *signed* by the Attorney for the Commonwealth." For the reasons that follow, we hold that the rubber stamped signature meets the requirements of Pa.R.Crim.P. 225(b), and thus reverse the Order of the Superior Court, 285 Pa.Super. 594, 428 A.2d 204, which affirmed the grant of a motion in arrest of judgment.

On September 20, 1978, after preliminary hearing, ten criminal informations were filed against Emanuel, a detective sergeant in the Chester Police Department, in connection with his participation in a scheme to collect witness fees for testifying in cases where he never appeared. Each of these informations was signed by the rubber-stamped signature of the district attorney. In a supplemental Omnibus Pre-trial Motion Emanuel raised the issue of the validity of the information on account of the rubber stamped signature. Relief was denied and the case proceeded to trial before a jury in the Court of Common Pleas of Delaware County. At the close of the Commonwealth's case in chief, the Commonwealth withdrew six of the ten informations. On March 13, 1979, the jury found appellant not guilty of one of the remaining four informations, and guilty of the other three: theft by unlawful taking (39 counts); criminal conspiracy (tampering with public records) (211 counts); criminal conspiracy (theft by unlawful taking) (39 counts). Emanuel thereafter filed post verdict motions, and on September 24, 1979 the trial court granted Emanuel's motion in arrest of judgment. The trial court held that an information signed by the rubber-stamped signature of a district attorney is void *ab initio,* and that the subsequent acquittal of Emanuel's unindicted co-conspirator on the two charges submitted, tampering with public records and theft by deception, required arrest of judgment in Emanuel's case. The trial court's rationale was that in a conspiracy case the Commonwealth must prove that two or more persons are guilty, and that such proof is impossible where the only other co-conspirator is acquitted of charges arising from the same transactions.

The Commonwealth appealed from the Order granting Emanuel's motion in arrest of judgment and the Superior Court affirmed, reasoning that the meaning of the word "signed" is ambiguous, and therefore is not dispositive of whether a rubber-stamped signature met the requirements of the rule. Citing its decisions in *Commonwealth v. Belcher,* 258 Pa.Super. 153, 392 A.2d 730 (1978) and *Common-*

*wealth v. Levenson,* 282 Pa.Super. 406, 422 A.2d 1355 (1980), the court held that the rubber-stamped signature was inadequate because in the absence of a handwritten signature "it is not at all apparent that a reasoned evaluation of the advisability of instituting a criminal trial has been made," citing *Commonwealth v. Belcher, supra.* Further, the court stated that if the rubber-stamped signature were to be approved, such approval would frustrate the Judicial Code's requirement that when a district attorney delegates authority to an assistant district attorney to sign informations, he must file with the clerk of courts a written designation identifying the person so authorized. *See* 42 Pa.C.S.A. § 8931(i).

We begin our inquiry with what is *not* in the case. Contrary to the view of the Superior Court, we do not believe that Section 8931 of the Judicial Code is relevant to the question before us.[1] Emanuel does not argue that the

1. Section 8931, in pertinent part, provides:

   (d) **Duties of prosecuting attorneys.**—Whenever a transcript of proceedings, complaint and all related papers in a criminal proceeding where the defendant has been held for court have been transmitted to the clerk of court or the officer designated by the court, such officer, after recording the same, shall immediately transmit the documents or a copy thereof to the district attorney. The district attorney or his designee shall have the duty to inquire into and make full examination of all the facts and circumstances connected with each such case to determine if the facts and circumstances warrant the filing of an information or informations premised upon the transcript. No information shall be filed by the district attorney concerning alleged criminal violations where a preliminary hearing has not been held or properly waived except as prescribed by general rules.

   (e) **Disposition of cases.**—The district attorney shall sign all informations. The information shall be filed in the form prescribed by general rules.

   (i) **Definition.**—As used in this section "district attorney" includes a special attorney appointed by the Attorney General in the manner provided by statute, an acting district attorney and any assistant district attorney whose authority to act for the district attorney under this section is evidenced by a written designation executed by the district attorney or acting district attorney and filed with the clerk of the courts.

   Act of July 9, 1976, P.L. 586, No. 142, § 2 effective June 27, 1978, *as amended,* 42 Pa.C.S.A. § 8931.

person who stamped the informations was not properly authorized to do so or that the district attorney did not make a full inquiry into the facts and circumstances of his case; he argues only that the use of such a stamp does not meet the signature requirements of Pa.R.Crim.P. 225, and that question is separate from other challenges to the legal validity of the informations. Since neither the question of the adequacy of the district attorney's review nor the question of the legality of any delegation of authority was raised, we do not address these matters; nor do we decide the Commonwealth's assertion that if § 8931 were applicable, it is unconstitutional because it violates the doctrine of separation of powers in that it usurps this Court's constitutional authority to establish rules of criminal procedure. *See* Pa. Const. Art. V § 10(c).

■ Returning to matters that are relevant to this case, Pa.R.Crim.P. 225(b), in pertinent part, provides:

> The information shall be signed by the attorney for the Commonwealth . . . .

As noted by the Superior Court, the rules of criminal procedure do not define "signed," and Pa.R.Crim.P. 2 states that the rules "shall be construed—as nearly as may be in consonance with the rules of statutory construction." The Statutory Construction Act of 1972 states—"words and phrases shall be construed according to . . . their common and approved usage". 1 Pa.C.S.A. § 1903(a).

The Commonwealth argues that the common and approved usage of the word "signed" includes the use of a rubber stamp to produce a signature. Black's Law Dictionary (4th Ed.) defines "sign" as follows:

> **SIGN.** To affix one's name to a writing or instrument, for the purpose of authenticating it, or to give it effect as one's act. . . . To attach a name or cause it to be attached to a writing *by any of the known methods* of impressing a name on paper. . . . To affix a signature to; to ratify *by hand or seal;* to *subscribe in one's own handwriting.*

Emphasis supplied. While the Commonwealth's assertion is not without merit, that it relied on the common and ordinary legal meaning of "signed" in utilizing a signature stamp, it is our view that the various meanings of the word "sign" at least create an ambiguity and require that we consider the question in a broader context.[2]

The heart of the case in favor of a handwritten signature is well expressed by the Superior Court in *Commonwealth v. Veneri:*

> The district attorney or his designee is . . . mandated to inquire into and make full examination of all the facts and circumstances connected with each case to determine if the filing of an information is warranted 42 Pa.C.S.A. § 8931(d). Thus the act of approving the information is one fraught with grave consequences not the least of which may be the career, reputation and very freedom of the defendant. It would demean the significance of this

---

**2.** The Oxford English Dictionary, which traces English usage back to the year 1250, provides no less ambiguous information on the meaning of "signed." The oldest usage listed, from c. 1305, concerns the word in a religious context:

> St. Edmund 66 in E.E.P. (1862) 72 In mie foreheuede iwrite mie name þu schalt iseo; Signe þerwiþ þi foreheued & þi breost also.

The meanings listed next are:

> 2. To place some distinguishing mark upon (a thing or person); to mark with a sign. 1601 Shaks. *Jul C.* III, i, 206 Heere thy Hunters stand Sign'd in thy Spoyle, and Crimson'd in thy Lethee. . . . 1697 DRYDEN *Aeneid* IX, 130 There Sprung A Light that sign'd the Heav'ns, and shot along.

> \* \* \* \* \* \*

> 4. To attest or confirm by adding one's signature; to affix one's name to (a document, etc.). 1477 EARL RIVERS (Caxton) *Dictes* II Signe nor seale them not til thou haue ouerseen them.

> \* \* \* \* \* \*

> 5. *intr.* To affix one's signature. . . . 1766 BLACKSTONE *Comm.* II. 377 Though the witnesses must all see the testator sign, . . yet they may do it at different times.

> \* \* \* \* \* \*

> 6. *trans.* To write or inscribe (one's name) as a signature. 1817 Scott *Lett.* I. 407, I am about to sign my name three hundred times.

Thus, it seems fair to conclude that historically and currently, "to sign" may mean either to make some sort of identifying mark or to subscribe one's name.

fateful document if we were to interpret the words "shall be signed" to permit affixing a rubber stamp facsimile to the information.

306 Pa.Super. 396, ——, 452 A.2d 784, 787 (1982). While we share the Superior Court's view of the significance which the filing of a criminal information may have on the life of an individual, we do not believe that the mere requirement of a manually written signature addresses the dangers that an information may be filed in error or without proper review.

Contrary to the view of the Superior Court, a handwritten signature does not signify more or less than is signified by a facsimile signature. Manually signed informations may be subscribed without having been read, or they may even be signed in blank. On the other hand, it may be in a particular case that a facsimile signature has been affixed only after a full review by a duly authorized person. There is nothing in the physical appearance of either type of signature which requires the conclusion that a proper review by an authorized person has or has not been made. Thus, a *per se* rule against facsimile signatures is inadvisable, and in any event, would not address the evil sought to be prevented.

Basically, the interest sought to be protected by the signature requirement of Pa.R.Crim.P. 225 is the right of a citizen to be free from unjust or unduly oppressive government interference. In the context of the filing of a criminal information, this interest is protected, in part, by our requirement in Pa.R.Crim.P. 225 that the information be signed by the government official authorizing the filing of the information. When the authorizing official has been identified—either by a manually subscribed signature or a facsimile signature—and other formal requirements have been met, a rebuttable presumption is raised that the information is legally valid. Thus, due process requires that when the Commonwealth elects to file a criminal information against an individual, a particular identifiable government official must be named on the information, that person

must sign the information by manual or facsimile signature, and the signatory must be prepared to establish that the information meets all legal requirements, should he be called upon to do that by a court of competent jurisdiction.

In the present case, Emanuel challenges only the legal sufficiency of the facsimile signature; he does not otherwise challenge the adequacy or validity of the informations filed against him. Thus, Emanuel is not claiming that the district attorney acted without cause or deliberation in filing the informations. Neither does Emanuel claim that his defense was adversely affected by the facsimile signature, for the signature on the information is plainly irrelevant to the defense which the accused has available to him at trial. It would, thus, be anomalous if Emanuel were discharged, not because criminal informations were wrongly or erroneously filed against him; not because the defense of his case was prejudiced by any act of the Commonwealth; not because the evidence against him was insufficient to sustain a criminal conviction; but because the Commonwealth's attorney misinterpreted the requirement for one type of signature rather than another. Neither the provisions of Pa.R.Crim.P. 2 that the rules be construed to secure fairness in administration, nor any other rational consideration would justify such a result.

■ Reversed and remanded for sentencing.[3]

ROBERTS, C.J., and HUTCHINSON, J., concur in the result.

NIX, J., did not participate in the consideration or decision of this case.

**3.** The trial court's holding that the acquittal of Emanuel's unindicted co-conspirator on charges relating to the same transactions underlying the present case requires the reversal of Emanuel's conviction for conspiracy is in error. *See* our subsequent decision in *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173 (1980).