470 A.2d 1369

**COMMONWEALTH of Pennsylvania**

v.

**John KIMBLE, Appellant.**

Superior Court of Pennsylvania.

Submitted July 12, 1983.

Filed Jan. 6, 1984.

500

Robert F. Pappano, Assistant Public Defender, Media, for appellant.

David Fritchey, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER, CA-VANAUGH, WICKERSHAM, ROWLEY, WIEAND and POPOVICH, JJ.

CERCONE, President Judge:

This is a direct appeal from the judgment of sentence imposed by the Court of Common Pleas of Delaware County on March 24, 1981 following appellant's conviction in a jury trial of Failure to File Tax Returns and Failure to Remit Tax Monies Collected.[1] In pressing the instant appeal, appellant advances several arguments, none of which we perceive as enjoying any merit. Consequently, we affirm the judgment of sentence.

Appellant, in his capacity as President and Treasurer of K.B.D.S. Associates, Inc. (hereafter "KBDS"), a manufacturing concern doing business in Drexel Hill, Delaware County, signed and filed a sales tax license application with the Sales and Use Tax Division of the Pennsylvania Department of Revenue (hereafter "Department of Revenue"). Upon the granting of that application, appellant assumed responsibility for the collection of sales tax on the products manufactured and sold by KBDS, the preparation of tax forms, the filing of tax returns, and the remitting of taxes collected to the Department of Revenue.

Appellant fulfilled his responsibilities to the Commonwealth until spring, 1975. During the "2A" quarter of that year (April and May), he failed to file a return or remit any taxes prior to the filing deadline of June 15. Moreover, appellant did not remit the taxes owed by KBDS for the "2B" quarter of 1975 (June), although he did file a return by the July 31 deadline.

As a result of these omissions, appellant's sales tax license was rescinded on August 31, 1975.[2] Although appellant was contacted on numerous occasions by agents of the Department of Revenue, and despite the fact that he re-

1. 72 P.S. § 7268.

2. Appellant's sales tax license was finally cancelled on February 18, 1977. His current arrearages total $391.70.

ceived three notices of delinquency, the problem was not rectified. On December 21, 1976, a private criminal complaint was filed against appellant by Nathaniel Namerow, an agent of the Department of Revenue. A summons was issued the following day, December 22, 1976.

On January 25, 1977, appellant signed a bail recognizance in response to the complaint and summons, and a preliminary hearing was scheduled for February 1, 1977. That hearing, together with eleven subsequent hearings, was continued in order to allow appellant to obtain counsel and arrange for payment of his tax liabilities. Appellant later executed a promissory note and liquidated a portion of his debt to the Department of Revenue. One check submitted in partial satisfaction of the tax obligation was not honored due to insufficient funds.

Appellant then inquired if the complaint would be withdrawn if he paid the delinquencies, noting that he was experiencing some difficulty in erasing his liabilities since KBDS was failing as a commercial enterprise. The corporation later became involved in Chapter Eleven[3] bankruptcy proceedings in federal court. As a consequence, appellant asserted that he was unable to resolve his tax problems with the Commonwealth insofar as federal authorities had advised him that no payment on the Pennsylvania liability could occur until he had been discharged in the federal bankruptcy litigation.

After having been granted numerous continuances of his preliminary hearing, appellant failed to appear at the hearing scheduled for August 17, 1978. The district justice then issued a warrant for appellant's arrest which was executed on October 2, 1978. After the granting of yet another continuance, the preliminary hearing was conducted on January 31, 1979. Appellant was charged by information and arraigned that same day.

Appellant's counsel filed a pre-trial motion which alleged, *inter alia*, that the charges should be dismissed because

3. 11 U.S.C.A. § 101 *et seq.*

the information was not signed personally by the District Attorney but was instead stamped with a facsimile of his signature. The motion was denied by the lower court and appellant proceeded to trial on July 23, 1980. The following day, July 24, 1980, appellant was found guilty of Failure to File Tax Returns and Failure to Remit Tax Monies Collected.[4]

Post-verdict motions in arrest of judgment and for a new trial were filed, briefed, argued and ultimately denied by an order of the lower court dated February 6, 1981. On March 24, 1981, appellant appeared for sentencing and was ordered to pay the costs of his prosecution as well as a fine totalling $1,400, make restitution in the amount of $391.70 for back taxes owed to the Department of Revenue, and serve a term of probation of two years. The instant appeal then followed.

Appellant argues initially that the lower court erred in failing to discharge him at a pre-trial habeas corpus hearing on the basis that the information filed against him by the Commonwealth was affixed solely with a rubber-stamped facsimile signature of the district attorney. Appellant cites our opinion in *Commonwealth v. Emanuel*, 285 Pa.Superior Ct. 594, 428 A.2d 204 (1981), as support for his contention that Pa.R.Crim.P. 225(b)[5] requires that an information bear the handwritten signature of the prosecuting attorney.

We acknowledge that insofar as appellant challenged the validity of the information through a pre-trial motion to dismiss,[6] our opinion in *Emanuel* would seem to require his discharge. Unfortunately for appellant, however, our Supreme Court, in review of our decision in *Emanuel*, rejected

4. The third count of the information, charging appellant with Failure to Permit Inspection of Records, was withdrawn by the Commonwealth prior to trial.

5. Rule 225(b) of the Pennsylvania Rules of Criminal Procedure provides in part that an "information shall be *signed* by the attorney for the Commonwealth..." (emphasis supplied).

6. *See Commonwealth v. Veneri and Thomas,* 306 Pa.Superior Ct. 396, 452 A.2d 784 (1982).

in toto our disposition of that case. *Commonwealth v. Emanuel,* 501 Pa. 581, 462 A.2d 653 (1983). Speaking for a majority of the Court, Justice Flaherty quoted from our Opinion in *Commonwealth v. Veneri and Thomas* requiring handwritten signatures on criminal informations:

> The district attorney or his designee is ... mandated to inquire into and make full examination of all the facts and circumstances connected with each case to determine if the filing of an information is warranted 42 Pa.C.S.A. § 8931(d). Thus the act of approving the information is one fraught with grave consequences not the least of which may be the career, reputation and very freedom of the defendant. It would demean the significance of this fateful document if we were to interpret the words "shall be signed" to permit affixing a rubber stamp facsimile to the information.

*Commonwealth v. Veneri and Thomas, quoting* 306 Pa.Superior Ct. at 402, 452 A.2d at 787.

However, in reversing our decision in *Emanuel,* the Court dismissed such an argument, holding that

> contrary to the view of the Superior Court, a handwritten signature does not signify more or less than is signified by a facsimile signature. Manually signed informations may be subscribed without having been read, or they may even be signed in blank. On the other hand, it may be in a particular case that a facsimile signature has been affixed only after a full review by a duly authorized person. There is nothing in the physical appearance of either type of signature which requires the conclusion that a proper review by an authorized person has or has not been made. Thus, a *per se* rule against facsimile signatures is inadvisable, and in any event, would not address the evil sought to be prevented. (501 Pa. at 587, 462 A.2d at 656).

The Court noted that Pa.R.Crim.P. 225 has as its goal the protection of a citizen from "unjust or unduly oppressive government interference". *Id.,* 501 Pa. at 587, 462 A.2d at 656. This interest is advanced by requiring that

the government official who authorizes the commencement of a prosecution be identified on the face of the information should the official be later called upon by a court to establish that the information complies with all legal requirements. Thus, once the authorizing official is identified, whether by a manually-subscribed signature of a rubber-stamped facsimile signature, there arises a rebuttable presumption that the information is legally sound. *Id.*

■ Appellant does not contend that his prosecution was undertaken in the absence of due deliberation by the prosecuting authorities,[7] nor does he argue that his defense at trial was in some way impaired by the fixing of a facsimile signature to the information by the Commonwealth. Given the recent decision rendered by the Supreme Court in *Emanuel,* we conclude that because the identity of the authorizing official appears on the face of the information, albeit in facsimile form, the requirements of due process and Pa.R.Crim.P. 225(b) have been satisfied. Consequently, we reject appellant's claim to the contrary.

7. Justice Flaherty's Opinion *Emanuel* elaborates on the different goals sought to be achieved by Pa.R.Crim.P. 225(b) and Section 8931 of the Judicial Code, 42 Pa.C.S.A. § 8931. Justice Flaherty notes that the former seeks only to assure that the identity of the prosecuting authority is perceptible and in no way implicates the latter provision which is concerned solely with the duty of the district attorney to inquire fully into all facts and circumstances attendant to a particular case before causing the initiation of criminal proceedings against a defendant. Section 8931 provides in pertinent part:

(d) Duties of prosecuting attorneys.—Whenever a transcript of proceedings, complaint and all related papers in a criminal proceeding where the defendant has been held for court have been transmitted to the clerk of court or the officer designated by the court, such officer, after recording the same, shall immediately transmit the documents or a copy thereof to the district attorney. The district attorney or his designee shall have the duty to inquire into and make full examination of all the facts and circumstances connected with each such case to determine if the facts and circumstances warrant the filing of an information or informations premised upon the transcript. No information shall be filed by the district attorney concerning alleged criminal violations where a preliminary hearing has not been held or properly waived except as prescribed by general rules.

(

Appellant next maintains that the lower court erred in failing to dismiss the information on the ground that it was filed subsequent to the expiration of the applicable statute of limitations. More specifically, appellant argues that the filing of the *complaint* on December 21, 1976 was not sufficient to toll the statute of limitations because, insofar as appellant was not charged with a violation of the Crimes Code,[8] the statute of limitations could only be tolled by the filing of an information. Appellant argues that since the violations of the Tax Code were committed between May and July 1975, and since the *information* was not filed until January 31, 1979, the applicable statute of limitations expired prior to the institution of criminal proceedings against him, thus requiring his discharge. We cannot agree.

In *Commonwealth v. Bidner*, 282 Pa. Superior Ct. 100, 422 A.2d 847 (1980), the Superior Court, speaking through Judge Hester, ruled that "the clear intent of the legislature by virtue of § 107(a)[9]," 282 Pa.Superior Ct. at 114, 422 A.2d at 854, authorized the application of the Crimes Code statute of limitations, 18 Pa.C.S.A. § 108,[10] to an election code violation which was perpetrated after the effective date of the Crimes Code. *Id.* Similarly, in *Commonwealth v. Milano and Terra*, 300 Pa.Superior Ct. 251, 446 A.2d 325 (1982), Judge Hoffman, in holding that prose-

8. Act of December 6, 1972, P.L. 1482 No. 334, Section 1, eff. June 6, 1973.

9. 18 Pa.C.S.A. § 107(a) provides as follows:
"The provisions of Part I of this title [18 Pa.C.S.A. §§ 101–1106] (relating to preliminary provisions) are applicable to offenses defined by this title or by any other statute."

10. 18 Pa.C.S.A. 108(b)(2) repealed states:
"A prosecution for any other offense under this code must be commenced within two years after it is committed."
18 Pa.C.S.A. § 108 now states that
"[a] prosecution for any offense under this title must be commenced within the period, if any, limited by Chapter 55 of Title 42 (relating to limitation of time)." [Footnote omitted].
The time limitation currently prescribed by 42 Pa.C.S.A. § 5552 is, like that provided in 18 P.S. § 108(b)(2), *supra,* two years.

cutions for violations of the Controlled Substance, Drug, Device and Cosmetic Act were timely instituted, had occasion to observe that "(t)he Crimes Code was passed in December, 1972 as a comprehensive effort to collate, modernize, and codify the criminal law of the Commonwealth." *Id.*, 300 Pa.Superior Ct. at 256, 446 A.2d at 328. As a result, Judge Hoffman concluded that Section 108 of the Crimes Code must be regarded as constituting all-encompassing statutes of limitations for all crimes and offenses. Thus, in view of our rulings in *Bidner* and *Milano and Terra*, the two year statute of limitations afforded by the Crimes Code is that which is properly applied in the instant prosecution for violations of the Tax Code.

Insofar as we have concluded that Section 108 is to be applied in prosecutions commenced both within and without the Crimes Code, we reject appellant's assertion that the date of origin of his prosecution is that upon which the information was filed. As our Opinion in *Commonwealth v. Milano and Terra* explains, the legislature, in enacting a new statute of limitations applicable to all crimes and offenses, "repudiated the position that a prosecution could only be commenced by filing an indictment or information." *Id.*, 300 Pa.Superior Ct. at 257–258, 446 A.2d at 328. Indeed the very language of 18 Pa.C.S.A. 108(e) (repealed) [11] belies appellant's contention that his prosecution was not officially initiated until the filing of the information. Section 108(e) provides that a "prosecution is commenced either when an indictment is found *or when a warrant or summons is issued* if such warrant or summons is executed without reasonable delay." (Emphasis supplied). In the case at bar, the Tax Code offenses were committed by appellant

11. 18 Pa.C.S.A. § 108(e) (repealed) has been replaced by 42 Pa.C.S.A. § 5552(e), which states as follows:

(e) Commencement of prosecution.—except as otherwise provided by general rule adopted pursuant to section 5503 (relating to commencement of matters), a prosecution is commenced either when an indictment is found or an information under section 8931(b) (relating to indictment and information) is issued, or when a warrant, summons or citation is issued, if such warrant, summons or citation is executed without unreasonable delay.

between May and July of 1975. The complaint and summons were issued on December 21, 1976 and December 22, 1976 respectively. Inasmuch as the Commonwealth could have instituted proceedings against appellant as late as May, 1977, under the applicable two year statute of limitations, it is apparent that the Commonwealth commenced appellant's prosecution in timely fashion, and that the court below committed no error in denying appellant's pre-trial motion to dismiss.

■■■■ Appellant advances the additional argument that the lower court erred in failing to dismiss the information as violative of Pa.R.Crim.P. 225(c) in that it cites appellant for infringement of a statute which, at the time the information was filed, had been repealed. Count One of the information alleged in pertinent part that appellant

> ... did wilfully and maliciously fail, neglect or refuse to file Tax Returns required by the sales and Use Tax Act of March 6, 1956, P.L. 1228 or Tax Reform Code of 1971 as amended, to Pennsylvania Department of Revenue or any of its agents.

Count Two charged in pertinent part that appellant

> ... did wilfully and maliciously fail, neglect or refuse to remit the monies collected under the Sales and Use Tax imposed by the Act of March 6, 1956, P.L. 1228 or Tax Reform Code of 1971, as amended, to the Pennsylvania Department of Revenue or any of its agents.

In the lower left corner of the information, under the caption "Citation-Statute-Section," there were typed the words "Violation of the Sales and Use Tax Failure Etc. to Remit Tax Monies Act of March 6, 1956 P.L. 1228 (72 P.S.Sect. 3403–573)." Appellant contends that insofar as the cited statute (72 P.S. § 3403–573) has been repealed,[12]

12. 72 P.S. § 7101 *et seq.*, known as the "Tax Reform Code of 1971," became effective immediately upon its enactment on March 4, 1971. The Tax Reform Code repealed the Act of March 6, 1956, P.L. (1955) 1228, commonly referred to as the "Selective Sales and Use-Tax." The criminal provisions of the old and new statutes, 72 P.S. § 3403—573 and 72 P.S. § 7268 respectively, are materially identical. In fact, the

the information is defective under Pa.R.Crim.P. 225(c) and should have been quashed. We are unable to address the merits of this claim since it is clear that challenges to the legitimacy of an information must be raised in a pre-trial motion to quash the information. Pa.R.Crim.P. 306.[13] All grounds for the relief demanded must be set forth in the motion and failure to state a ground results in its waiver. Pa.R.Crim.P. 306(e). *See also Commonwealth v. Boerner,* 281 Pa.Superior Ct. 505, 422 A.2d 583 (1980); and *Commonwealth v. Williams,* 252 Pa.Superior Ct. 587, 384 A.2d 935 (1978). In the case at bar, appellant filed a pre-trial motion to dismiss the information on the ground that it did not contain the handwritten signature of the prosecuting official. The motion did not, however, state as an additional reason for dismissal the citation of a repealed statute by the Commonwealth in the information. Because appellant's challenge to the information in the latter regard is untimely, we view it as having been waived.[14]

Finally, appellant argues that the lower court erred in instructing the jury that a "willful" violation of the tax statute would be a basis for criminal liability and that appellant's good faith in withholding from the Common-

comment to 72 P.S. § 7268 discloses that that section was derived from the former section 3403–573 of Title 72.

**13.** Rule 304 was amended and renumbered as the present Rule 306 by order of the Supreme Court of Pennsylvania on June 29, 1977, effective January 1, 1978.

**14.** We note parenthetically that appellant's claim enjoys no substantive merit whatsoever. Pa.R.Crim.P. 225(c) is designed to afford a defendant with adequate information regarding the charges filed against him. Given the protracted nature of the pre-trial proceedings in this case, appellant could hardly be said to have been prejudiced by the citation of the repealed statute in the information. Moreover, the repealed statute was cited in Counts One and Two of the information in alternative fashion together with the correct citation to the Tax Reform Code of 1971. Finally, the very language of Pa.R.Crim.P. 225(c) renders appellant's contention specious:

The information shall contain the official or customary citation of the statute and section thereof, or other provision of law which the defendant is alleged therein to have violated; *but* the omission of or *error in such citation shall not affect the validity or sufficiency of the information.* (Emphasis supplied.)

wealth the tax monies due it was not a defense to the crime charged. At trial, appellant alleged that his failure to remit sales tax monies which he had collected on KBDS' sales was involuntary because the money was in a bank account that had been frozen by the actions of his creditors. On appeal, appellant urges that an act is willful when it is *both* intentional and voluntary, and that the lower court's instructions to the jury that an act may be willful despite the good faith with which it is performed, is tantamount to creating a strict liability crime.

We agree with the conclusion reached by the lower court that a charge which would direct the jury to acquit appellant, should it conclude that appellant acted in good faith in refusing to remit sales tax monies to the Commonwealth, was not proper in the case at bar since the criminal statute in question, 72 P.S. § 7268, does not provide for such a "good faith" defense. We regard the fact that 72 P.S. § 726*9 does* provide for a limited good faith defense in a limited *civil* context, coupled with the fact that the preceding criminal section presently subject to our scrutiny (Section 7268) is totally barren of such ameliorative language, are reflective of a conscious election by our legislature to limit the application of a good faith defense to civil tax litigation. Section 7268 requires that a violation of its provisions be "willful." [15] Insofar as the lower court correctly charged the jury concerning the necessity of a willfull failure to remit tax monies as grounds for appellant's

**15.** 18 Pa.C.S.A. § 302(g) provides in pertinent part that:

"A requirement that an offense be committed *willfully* is satisfied if a person acts knowingly with respect to the material elements of the offense ..." (Emphasis supplied).

18 Pa.C.S.A. § 302(b)(2) states that:

A person acts *knowingly* with respect to a material element of an offense when:

(1) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(11) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result. (Emphasis supplied).

512

conviction,[16] we reject appellant's contention that the court below usurped the function of the jury by removing from its consideration the possible good faith of appellant as it may have impacted upon the willfullness and voluntariness of appellant's behavior.

Judgment of sentence affirmed.

**16.** With respect to the element of willfullness, the lower court instructed the jury as follows:

... It implies an act which is done intentionally, designedly. It is an act done intentionally, knowingly and purposely.

In other words, a willful act is that sort of act which results from a person being consciously aware of particular elements and here aware of requirements to report or remit sales tax. Being aware then it implies a decisional process, intent actually, made. Willfully posits the free act to implement that decision which a person has made.

So, related to the charge here you must find that the defendant was aware of provisions of the act, that is of the responsibility to remit the sales tax and determined not to do so. That is willfully failed to do so and that there was no lack of voluntariness, that it was his own free and voluntary decision which he implemented willfully or purposely or with design.