555 A.2d 100

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward KHOREY, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Frank TRPUTEC, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1988.

Decided March 9, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

4

Vincent C. Murovich, Pittsburgh, for appellant in No. 97 W.D. Appeal Docket 1987.

LeRoy S. Zimmerman, Atty. Gen., Robert A. Graci, Sr. Deputy Atty. Gen., William A. Bebe, Deputy Atty. Gen., and Andrea F. McKenna, Harrisburg, for appellee in No. 97 W.D. Appeal Dkt. 1987.

LeRoy S. Zimmerman, Atty. Gen., Paul M. Yatron, First Deputy Atty. Gen., Robert A. Graci, Chief Deputy Atty. Gen., and Andrea F. McKenna, Deputy Atty. Gen., Harrisburg, for appellant in No. 21 W.D. Appeal Dkt. 1988.

Michael J. Healey, Healey & Davidson, Pittsburgh, for appellee in No. 21 W.D. Appeal Dkt. 1988.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

The issues presented in these appeals, which have been consolidated, concern the limitations on the attorney general to initiate a criminal prosecution under section 205 of the Commonwealth Attorneys Act ("Attorneys Act") 71 Pa.Stat. § 732–101 et seq. (Purdon Supp.1988). Disposition of these appeals requires an elucidation of the principles first set forth in Commonwealth v. Carsia, 512 Pa. 509, 517 A.2d 956 (1986).

## I.

### A.

Appellant Edward Khorey appeals from that part of the order of the Superior Court which affirmed a judgment of sentence entered against him by the Court of Common Pleas of Allegheny County.

Khorey's convictions stem from the following facts. In 1981, the West Miflin Township police arrested one JoAnn Walters for retail theft. Ms. Walters retained attorney Bruce Carsia to defend her. With Ms. Walters' consent, Carsia contacted Khorey, a police officer from Munhall Township, which is contiguous to West Miflin Township, in an attempt to "fix" the case. Khorey agreed to the scheme and contacted the arresting officer in an effort to further it. The arresting officer, in turn, contacted the Bureau of Criminal Investigations of the Attorney General's Office. As a result of the Bureau's investigation, Khorey, Carsia, and Walters were arrested and prosecuted.

The attorney general charged Khorey with bribery,[1] criminal solicitation,[2] criminal conspiracy,[3] and obstructing justice.[4] Prior to trial Khorey filed a motion to quash the information based upon the Attorneys Act which Khorey contended deprived the attorney general of the power to prosecute this matter. The trial court considered the motion on the morning of the trial. That same. day, however, before any ruling on the motion but after the hearing on the motion, Khorey entered into a plea agreement whereby he would plead guilty to all counts and withdraw his motion in return for the Commonwealth's recommending probation. The trial court accepted the plea, and imposed a sentence of probation on the bribery count while suspending sentence on the remaining counts.

1. 18 Pa.Cons.Stat. § 4701 (Purdon 1973).
2. 18 Pa.Cons.Stat. § 902 (Purdon 1973).
3. 18 Pa.Cons.Stat. § 903 (Purdon 1973).
4. 18 Pa.Cons.Stat. § 5101 (Purdon 1973).

As it happened, Carsia, who had been charged in identical fashion and who had filed an identical motion, did not plea bargain, and the trial court subsequently dismissed the charges against him.[5] Khorey then filed a timely motion to withdraw his guilty plea. A sharply divided Superior Court, sitting *en banc*, affirmed the trial court's denial of the motion. *Commonwealth v. Khorey*, 347 Pa.Super. 171, 500 A.2d 462 (1985). Khorey thereupon petitioned this Court for leave to appeal. That petition was granted on November 17, 1987. *Commonwealth v. Khorey*, 517 Pa. 589, 534 A.2d 769 (1987). We now affirm.

## B.

In the other case before the Court, *Commonwealth v. Trputec*, the Commonwealth appeals from the Superior Court order vacating a judgment of sentence entered against Frank Trputec after a jury convicted him of criminal solicitation[6] and criminal conspiracy.[7] Trputec was implicated in criminal activity by one Ron Arnold, who was cooperating with the attorney general pursuant to a plea agreement for an unrelated crime. As part of that agreement, Arnold was to aid in the prosecution of crimes of which he had knowledge.

Arnold arranged a meeting with Trputec to discuss an alleged arson at F & H Equipment, a truck repair shop owned by Trputec. To elicit information from Trputec, Arnold mentioned that Bill Hilton, with whom Trputec had set the fire, might talk to the police, who were reopening their investigation of the blaze. After some discussion, Trputec raised the possibility of having Hilton "erased." Later conversations led to an agreement to have Hilton killed for $10,000.

---

5. The trial court order dismissing the charges against Carsia was subsequently upheld both in the Superior Court, *Commonwealth v. Carsia*, 341 Pa.Super. 232, 491 A.2d 237 (1985), and thereafter in this Court. *Commonwealth v. Carsia*, 512 Pa. 509, 517 A.2d 956 (1986).

6. 18 Pa.Cons.Stat. § 902 (Purdon 1973).

7. 18 Pa.Cons.Stat. § 903 (Purdon 1973).

After an information was prepared and signed by the district attorney of Lawrence County, William Panella, the attorney general's office requested that Panella allow it to handle the prosecution because it already was handling charges pending against Trputec in other counties. When Panella consented, he was asked to write a letter requesting that the attorney general handle the prosecution.[8] Except for preparing and filing the information and the pretrial motions to consolidate, the attorney general's office conducted the prosecution of Trputec. The trial court, in a well-considered opinion, denied Trputec's motion challenging the authority of the attorney general to conduct the prosecution under the Attorneys Act. The Superior Court reversed and held that the circumstances surrounding the request that the attorney general handle the prosecution did not satisfy the requirements of the Attorneys Act. *Commonwealth v. Trputec*, 363 Pa.Super. 239, 525 A.2d 808 (1987). The Commonwealth sought review of the Superior Court order. This Court granted leave to appeal on February 17, 1988. *Commonwealth v. Trputec*, 517 Pa. 616, 538 A.2d 498 (1988). We now affirm.

## II.

### A.

Khorey attacks his sentence on two grounds. First, Khorey claims that his plea was not a knowing and voluntary relinquishment of his rights. Khorey argues that he

---

**8.** The District Attorney of Lawrence County sent a letter stating the following to Lawrence Claus, Senior Deputy Attorney General:

> Charges of criminal solicitation and criminal conspiracy have been cited against Frank Trputec for conduct by him in Lawrence County. We have become aware, however, that this defendant is also accused of conduct in other counties. Because of the multicounty scope of this prosecution and the fact that your office has been asked to handle the related prosecutions in Mercer County and Crawford County, we believe that the prosecution of the charges in Lawrence County could be handled in the most practical manner by your office. Therefore, by this letter, we are requesting that your office handle the prosecution of Mr. Trputec on the charges in Lawrence County. Do not hesitate to contact our office if we may be of any assistance to you in this prosecution.

was not advised that if the trial court had granted his petition challenging the authority of the attorney general, the charges would have been dismissed. Appellant's Brief at 13. Khorey argues that a lack of knowledge concerning this critical aspect of his case constitutes manifest injustice requiring that he be allowed to withdraw from the plea agreement.

To withdraw a guilty plea, the petitioner must show manifest injustice. *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982); *Commonwealth v. Starr*, 450 Pa. 485, 490, 301 A.2d 592, 595 (1973). "To be [c]onstitutionally valid, a plea of guilty must have been voluntarily, knowingly and intelligently made, i.e. *with an understanding of the nature of the charges against him, his right to a jury trial and an awareness of the consequences of his plea.*" *Commonwealth v. Enty*, 442 Pa. 39, 40, 271 A.2d 926, 927 (1971) (emphasis added).

Here, Khorey is unable to show that his plea was not entered knowingly and intelligently. The colloquy in which Khorey entered the guilty plea makes clear that Khorey understood that he was waiving the right to challenge the authority of the attorney general to conduct the prosecution. The colloquy went as follows:

THE COURT: I would like to discuss on the record as to the petition that was filed on behalf of Mr. Khorey ... that being [the] jurisdictional question that was raised this morning.

[Lawrence Claus, Deputy Attorney General]: Well, as I understand, that petition has now been withdrawn, Your Honor.

THE COURT: I would like him to state on the record that he knows the nature of that petition.

MR. CLAUS: Mr. Khorey, you mean, ...

THE COURT: Yes.

[Vincent Murovich, counsel for Khorey]: Mr. Khorey, you understand the petition presented here this morning on your behalf on the question of jurisdiction of the Attorney General to investigate, prosecute in the case?

MR. KHOREY: Yes, sir.

MR. MUROVICH: And are you aware, also, that there has been no decision by the Court on that petition?

MR. KHOREY: Yes, sir.

MR. MUROVICH: And you were here, present in court this morning, when evidence in testimony and statements were made in connection with the petition and with the Commonwealth's attorney, that was the basis for the motion?

MR. KHOREY: Yes.

MR. MUROVICH: And as part of that plea bargain that we have entered into with Mr. Claus and the Attorney General's office, you have authorized me as your counsel to withdraw that petition of record?

MR. KHOREY: Yes, sir.

MR. MUROVICH: Mr. Murovich [sic], so it's no longer an issue before the Court?

MR. KHOREY: No, sir.

MR. MUROVICH: Is that what you desire?

MR. KHOREY: Yes.

MR. MUROVICH: And you fully understand that?

MR. KHOREY: Very well.

MR. MUROVICH: Any questions about it?

MR. KHOREY: No, sir.

MR. MUROVICH: Anything else, Your Honor?

THE COURT: You understand that that petition may have been granted, and if it hadn't been granted, there might have been several repercussions as a result of its being granted?

MR. KHOREY: Yes, sir.

THE COURT: However, it might have been denied, too, and there would have been some repercussions had it been denied?

MR. KHOREY: Yes, sir.

THE COURT: So that by your plea here today, I will not even get to the merits of that petition.

MR. KHOREY: Yes, Your Honor.

THE COURT: I will accept your plea provided I am convinced that it is knowingly, intelligently and voluntarily being made by you. Do you understand that?

MR. KHOREY: Yes, sir.

MR. CLAUS: Your Honor, the last question I would have for counsel, then, for each of these, Mr. Murovich, are you satisfied that your client Mr. Khorey, knowingly, voluntarily and intelligently has waived his rights and tendered a guilty plea?

MR. MUROVICH: I'm not accustomed to being interrogated. The fact I'm representing him, he's making a plea because I feel that way. There is no doubt in my mind, to answer your question.

N.T. 9-20-82 at 30–33. This colloquy demonstrates that Khorey was "fully aware of the ramifications of his action and [was] entering his plea voluntarily." *Commonwealth v. Ingram*, 455 Pa. 198, 200, 316 A.2d 77, 78 (1974).

The trial court intervened and stressed the importance of the withdrawal of the motion to dismiss while the prosecutor was conducting the colloquy. The trial judge specifically warned Khorey that the motion to dismiss, if granted, might carry "repercussions." Although the trial judge did not specifically state that one possible repercussion was the withdrawal of the entire prosecution, so specific a warning is not required to establish that Khorey's waiver was knowing and voluntary. As a pretrial matter, it would be unrealistic to require a trial judge to map out in detail every possible consequence of each right waived when a defendant abandons pending motions.

We have found no authority for the proposition that a defendant must be informed, in so many words, of his right to file a motion seeking to quash an information in order to show that the defendant's waiver of that right was knowing and intelligent, and we perceive no reason to create such a rule. Only fundamental rights, such as the right to counsel, require a warning to demonstrate waiver. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This Court has also held that, in a plea colloquy,

the trial court must ask questions that show the defendant understands the nature of the charges, that there is a factual basis for the plea, that the defendant understands that he is entitled to a jury trial, that the defendant understands he is presumed innocent until proven guilty, and that the defendant is aware of the permissible ranges of sentences or fines for the offenses charged. *Commonwealth v. Willis*, 471 Pa. 50, 51–52, 369 A.2d 1189, 1190 (1977); *Commonwealth v. Dilbeck*, 466 Pa. 543, 547, 353 A.2d 824, 826–27 (1976). The right to challenge the validity of an information under the Attorneys Act is not *in pari passu* with these fundamental rights.

To demonstrate waiver in these circumstances, it is sufficient that a defendant is warned that he is waiving the right to pursue his pretrial motions and that those motions, if successful, might have an impact on the outcome. Our conclusion that such a warning is adequate rests largely on our analysis of the nature of the right involved. The right waived is not one that precludes the state from bringing the charge. *See United States v. Broce & Broce Constr. Co.*, — U.S. —, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). The right asserted by Khorey is the right not to be prosecuted *by the attorney general*. The right is limited to just that. It does not encompass the right not to be haled into court *by any state agency*.

Moreover, this Court has declined to "relinquish its traditional power to consider certain circumstances surrounding the entry of the plea...." *Shaffer, supra*, 498 Pa. at 351, 446 A.2d at 596 (citations omitted). Here, Khorey was present in the court when a hearing was being held on his motion to quash the information. We do not suggest that a defendant's mere presence at a hearing involving an asserted right which is later waived necessarily leads to the conclusion that the subsequent waiver was voluntary, informed, and knowing. Such circumstances are, nonetheless, a factor which may be considered in evaluating the "totality of the circumstances" surrounding the entry of the

plea.[9]  *See id.,* 498 Pa. at 350, 446 A.2d at 595 (quoting *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976)).  Khorey's desire to benefit from the plea bargain is a "strong indicator" of the voluntariness of the plea.  *Commonwealth v. Lee,* 460 Pa. 324, 328, 333 A.2d 749, 750 (1975).  A defendant may "decide to accept a plea bargain offer solely to reap some benefit from the sentence recommendation reiterated to the judge at the time of the entry of the plea."  *Shaffer, supra,* 498 Pa. at 353, 446 A.2d at 596.  Here, the prosecutor made clear to the trial judge the terms of the plea agreement, namely, that Khorey would plead guilty in return for a recommendation of probation.  N.T. 9–20–82 at 4.  Waiver of the right to challenge the authority of the attorney general "was part of the price which he paid for the sentence of probation." *Commonwealth v. Khorey,* 347 Pa.Super. 171, 175, 500 A.2d 462, 464 (1985).

### B.

■ Khorey's second argument is that the attorney general's lack of authority to initiate the prosecution under the Attorneys Act deprived the Court of Common Pleas of subject matter jurisdiction.[10]  Khorey essentially adopts the reasoning of Judge Del Sole's dissent in the Superior Court. *Khorey, supra,* 347 Pa.Superior Ct. at 181–188, 500 A.2d at 467–70 (Del Sole, J., dissenting).  Pa.R.Crim.P. 225, which requires that the Commonwealth move to *nolle prosequi* or to file an information, further states that the "information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains: (1) a caption showing that the prosecution is carried on in the name of and by the authority of the Commonwealth of Pennsylvania."  Khorey argues that Rule 225 was not

9.  Similarly, we are reluctant to impute to a defendant knowledge of the legal significance of every motion filed on his behalf solely on the basis of the fact that it has been filed.

10.  Of course, couched in these terms, Khorey's attack on the authority of the attorney general is non-waiveable, for an "objection to lack of subject-matter jurisdiction can never be waived...." *Commonwealth v. Little,* 455 Pa. 163, 167, 314 A.2d 270, 272 (1974) (citation omitted).

satisfied because the person who signed the information was unable to show that the Commonwealth had the authority to carry on the prosecution. Khorey further argues that the information was facially invalid and therefore the Court of Common Pleas lacked subject matter jurisdiction. Therefore, according to Khorey, because the attorney general could not have cured the defect himself, the prosecution was void *ab initio* and not merely voidable.

In *Carsia, supra,* 512 Pa. at 513, 517 A.2d at 958, we held that the Attorneys Act was the sole source of the attorney general's authority. In so holding, we discussed the limitations imposed by the Attorneys Act only as they related to the authority of the attorney general. In *Carsia* we intimated no view as to the effects of the Attorneys Act on the subject matter jurisdiction of the Courts of Common Pleas. Our silence on this issue in *Carsia* merely echoes the silence which resounds in the language of the Attorneys Act. We are unwilling, in the face of the broad grant of original jurisdiction found in Article V, Section 5(b) of the Pennsylvania Constitution,[11] to infer from this silence that the General Assembly intended to impose a limit on the subject matter jurisdiction of the courts.

This conclusion is further supported by an analysis of the history of the Attorneys Act. In the early part of this century, this Court unanimously found that the attorney general was "clothed with the powers and attributes which enveloped Attorneys General at common law, including the right ... to supersede and set aside the district attorney when in the Attorney General's judgment such action [was] necessary." *Commonwealth ex rel. Minerd v. Margiotti,* 325 Pa. 17, 30–31, 188 A. 524, 530 (1936). The rationale for *Minerd* rested largely on the analogy to the common law origins of the attorney general:

During the 13th and 14th centuries, the King had no officials corresponding to an Attorney General and Solici-

---

11. That provision states: "There shall be one court of common pleas for each judicial district ... (b) having unlimited original jurisdiction in all cases except as may be otherwise provided by law." Pa. Const. art. V, section 5(b).

tor General. These offices did not come into existence until the latter part of the 15th and the early 16th centuries. During the early period of English legal history, the King was represented by numerous attorneys. They were appointed by letters patent which set forth their duties, the area over which their authority extended and the courts in which they were to practice. These attorneys were known by various names such as "attornati regis," "narratoreas pro rege," men "qui secuuntur [sic] pro rege" and the King's serjeants [sic]. During the middle ages the tendency arose to supersede these several attorneys with limited powers by a single attorney with much wider ones and to give this attorney the right to appoint deputies. This process was complete by the end of the 17th century and the two King's attorneys, the Attorney General and the Solicitor General, became the most important law officers of his kingdom.

*Id.*, 325 Pa. at 22, 188 A.2d at 526.

Soon after *Minerd* this Court observed that although the attorney general had discretion in determining whether to supersede district attorneys, "such discretion may be abused, and, if so, its exercise cannot be sustained." *Dauphin County Grand Jury Investigation Proceedings (No. 3)*, 332 Pa. 358, 364, *sub nomine In re Shelley*, 2 A.2d 809, 812 (1938).

As the twentieth century reached its meridian, one of our brethren for the first time raised serious doubts as to the analogy to the common law power of the attorney general to supersede district attorneys on his or her own initiative. In *Margiotti Appeal*, 365 Pa. 330, 75 A.2d 465 (1950), Justice Jones noted in dissent that "[t]he matter had never been passed upon at common law for the all-sufficient reason that elected prosecuting officers were unknown to its political institutions." *Id.*, 365 Pa. at 341, 75 A.2d at 470 (Jones, J., dissenting). In *Commonwealth v. Schab*, 477 Pa. 55, 383 A.2d 819 (1978), a plurality of this Court rejected the *Minerd* rationale, and relied on a variation of the view

first expressed by Justice Jones in *Margiotti Appeal, supra.* The plurality stated:

> Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the right to supersede an elected District Attorney, an officer unknown to the common law. It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General.

*Schab, supra,* 477 Pa. at 61, 383 A.2d at 822.

With the adoption of Article 4, Section 4.1 of the Pennsylvania Constitution,[12] the office of the attorney general became an elected position, where before it had been filled by gubernatorial appointment. In 1980, pursuant to the newly adopted constitutional provision, the General Assembly enacted the Attorneys Act.

■ The long history behind the Attorneys Act speaks only to the distribution of the power to prosecute as it relates to the accountability of prosecutors to the electorate. Our decision signals, as the twilight signals the end of the day, the death of a legal doctrine whose vitality nearly spanned a century. The Attorneys Act's silence on the issue of the attorney general's authority to prosecute as it relates to subject matter jurisdiction compels us to conclude that the Attorneys Act in no way whatsoever altered or diminished the subject matter jurisdiction of the Courts of Common Pleas.

12. That provision states:

> An Attorney General shall be chosen by the qualified electors of the Commonwealth on the day the general election is held for the Auditor General and State Treasurer, he shall hold his office during four years from the third Tuesday of January next ensuing his election and shall not be eligible to serve continuously for more than two successive terms; he shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law.

Pa. Const. art. IV, section 4.1 (adopted May 16, 1978).

■ In *Commonwealth v. Emanuel*, 501 Pa. 581, 587, 462 A.2d 653, 656 (1983), we held that a facsimile signature on an information creates a rebuttable presumption that an information is legally valid. Although in *Emanuel* there was no claim that "the person who stamped the informations was not properly authorized to do so," *id.*, 501 Pa. at 584–85, 462 A.2d at 655, we noted that the purpose of the signature requirement was to insure that "a particular indentifiable government official must be named on the information ... and the signatory must be prepared to establish that the information meets all legal requirements, *should he be called upon to do that....*" *Id.*, 501 Pa. at 587–88, 462 A.2d at 656. Here Khorey is precluded by his plea from making such a claim.[13]

Further, we think it appropriate that the rebuttable presumption extend to the authority of the attorney who signs an information. It is unnecessary to require the attorney general to show his or her authority under the Attorneys Act before he or she proceeds with every prosecution he or she brings. Rather, the attorney general need make the required showing only when the defendant raises the issue.[14]

■ It follows that the Attorneys Act did not deprive the Court of Common Pleas of Allegheny County of jurisdiction to accept Khorey's plea. To invoke the jurisdiction of a

13. We do not suggest that a subsequent jury verdict, where the defendant continues to assert innocence, would preclude review of the information. Of course, the jury verdict against Trputec did not preclude our review, and approval, of his objections to the information. We further note that Khorey knew of the error, and that the improper signature was not of the type which would be "difficult for defendants to uncover." *United States v. Mechanik*, 475 U.S. 66, 80, 106 S.Ct. 938, 946, 89 L.Ed.2d 50 (1986) (Marshall, J., dissenting).

14. We do not in any way encourage the attorney general to file informations without first undertaking an inquiry into the authority of the attorney general under the Attorneys Act to prosecute. To the contrary, Pa.R.Crim.P. 225 requires such an inquiry. Yet, the inquiry need not be exhaustive, and need not always prove to be correct. Although the official who signed the information against Khorey was incorrect, as we held in *Carsia, supra,* the law was not so clear at the time that the error was unreasonable, especially when Khorey knew of it and chose not to challenge it.

Court of Common Pleas, "it is necessary that the Commonwealth confront the defendant with a formal and specific accusation of the crimes charged." *Commonwealth v. Little*, 455 Pa. 163, 168, 314 A.2d 270, 273 (1974). One purpose of an indictment or an information is to satisfy the requirements of the Sixth Amendment to the United States Constitution and of Article I, Section 9 of the Pennsylvania Constitution, which enunciate the right to formal notice of charges. *Id.* Provided the constitutional imperative as to formal notice of charges has been satisfied, even the lack of a proper criminal indictment does not deprive the court of jurisdiction to accept a plea. *Commonwealth v. Diaz*, 477 Pa. 122, 127, 383 A.2d 852, 854 (1978); *Commonwealth v. Irby*, 445 Pa. 248, 250, 284 A.2d 738, 739 (1971).

Khorey does not claim that the information failed to give notice of the charges. Rather, Khorey claims that the signature of a Commonwealth attorney, not authorized to conduct the prosecution, rendered the information facially defective under Pa.R.Crim.P. 225. Appellant's Brief at 18. Therefore, Khorey concludes the court lacked subject matter jurisdiction. We disagree.

We conclude that, on the facts of this case, the fact that the information was signed by an assistant attorney general rather than a district attorney did not deprive the Court of Common Pleas of subject matter jurisdiction to enter a judgment of sentence on the guilty plea.

Here, although Khorey apparently did raise the issue, he withdrew his objection to the information. Therefore, the presumption of the validity of the signature remains. Accordingly, the information did not deprive the trial court of subject matter jurisdiction.

We emphasize the limited nature of our decision. Khorey was on notice as to the nature of the defect in the information, a defect which was relatively minor in that it did not reflect infidelity to the traditional purposes of an information, screening the charges and putting the defendant on notice. Finally, we note that the defective information was

*not* incurable in the sense that the defect would prevent Khorey from being prosecuted at all.[15]

## C.

In the *Trputec* case, the Commonwealth argues that the Superior Court's error was threefold. First, the Commonwealth argues that the Attorneys Act was intended only to limit the ability of the attorney general to supersede local district attorneys on his or her own initiative, and not to fetter the ability of the local district attorneys to delegate their authority to the attorney general. Appellant's Brief at 13. This argument is not persuasive. While this case is different from *Carsia, supra,* in that here the district attorney requested the attorney general to conduct the prosecution pursuant to section 205(a)(3) of the Attorneys Act, whereas *Carsia* only considered the applicability of sections 205(a)(1), (2), and (6), the same concerns apply. Section 205(a)(3) provides that the attorney general shall have the power to prosecute:

> Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.

**15.** This is not a case where the crime charged occurred outside the boundaries of the jurisdiction of the court. Such a defect in the information would be non-curable and goes to the subject matter jurisdiction of the court. We do not in any way retreat from our holdings that objections to subject matter jurisdiction are non-waiveable. Similarly, this case is distinguishable from one in which "the Military Police," Appellant's Brief at 18, officials not serving under the sovereignty of the Commonwealth, signed the information. A signature from such a person would, of course, not satisfy the traditional purpose of an information, namely, to insure that an "attorney for the Commonwealth ... sign the information and thereby assume responsibility for his discretionary and deliberative charging act." *Commonwealth v. Veneri,* 306 Pa.Super. 396, 404–05, 452 A.2d 784, 788 (1982). Of course, an attorney not working for an agency of the Commonwealth would not be readily accountable for the decision to sign the information.

71 Pa.Stat. § 732–205(a)(3) (Purdon Supp.1988). The language of this section makes clear that not just any request will suffice to vest the attorney general with authority to conduct the prosecution. The request must flow from either a lack of resources, either to investigate or to prosecute, or a potential conflict of interest.

The Commonwealth does not assert that any of the conditions precedent to a valid request was present. The language of the statute is clear, and permits no exceptions not expressly listed in the statute. We must conclude that, in the absence of a valid request, the attorney general lacked the authority under the Attorneys Act to conduct the prosecution. Nor do we believe, as the Commonwealth claims, that such a reading of the statute leads to the anomolous result that the "concern for the autonomy of our district attorneys has been translated into a holding which limits the ability of a district attorney to, in effect, delegate his prosecutorial ability by voluntarily assenting to the attorney general's request that his office prosecute a particular case." Appellant's Brief at 14.

As a practical matter, we think it highly unlikely that a district attorney, elected to prosecute, would ever claim that he or she had not delegated authority to the attorney general where, were he or she to make such a claim, the result would be that someone convicted of a crime might be set free on double jeopardy grounds. There would simply be too small an incentive, or, in fact, a disincentive, for the district attorney to police his or her own authority.

More importantly, the district attorney has no inherent authority to grant to the attorney general powers the General Assembly has prohibited the attorney general from exercising. The delegation of authority from a district attorney to a deputy district attorney is characterized by a different relationship than would be a "delegation" of authority to the attorney general. While a district attorney has control over deputy or assistant district attorneys because they are subordinates, such would not be the case with the attorney general, who would not be subject to the

same supervision. In the absence of such control, the attorney general cannot be said to be a mere agent of the district attorney. *See* Restatement (Second) of Agency sections 1(1), 14 (1957).

The Commonwealth's second contention is that the Superior Court engaged in impermissible fact-finding when it overturned the trial court finding and determined that the local district attorney had not lacked the resources to carry on the prosecution. An appellate court should not lightly reverse the findings of fact made by a trial court. We hold that appellate review is limited to review for abuse of discretion, and that the trial court abused its discretion in finding that the district attorney lacked resources within the meaning of section 205(a)(3) of the Attorneys Act. Here, the district attorney had filed the information and was apparently prepared to proceed. That the attorney general's office requested the district attorney to relinquish control over the prosecution strongly suggests that the district attorney was not motivated by a lack of resources. Further, the formal request, *see supra* at 103 n. 8, was itself requested by the attorney general. In addition, that letter cites no lack of resources. Although the letter does state that the prosecution could be handled "in the most practical manner" by the attorney general because of the related prosecutions in other counties, mere practical convenience is not a substitute for the lack of resources required by the statute.[16]

The Commonwealth finally argues that even if the attorney general was without authority to conduct the prosecution, that error did not contribute to the verdict and, consequently, the granting of a new trial was an inappropriate remedy. Essentially, The Commonwealth argues that a defendant who was improperly prosecuted by the attorney general under the Attorneys Act must show prejudice. To

---

**16.** Although not dispositive of this issue, a letter is extremely useful in establishing a documentary record of the request, not only for a court reviewing the legitimacy of the request, but also for simplicity and efficiency in discovery where the defendant seeks to challenge the authority of the attorney general.

adopt such a requirement would require interlocutory appeals from the Courts of Common Pleas after a denial of a motion to quash an information, for a defendant's objections to the information would otherwise escape appellate review. *See United States v. Dederich*, 825 F.2d 1317, 1320 (9th Cir.1987) (allowing interlocutory appeal from district court denial of motion to quash indictment because otherwise asserted misconduct before grand jury would be unreviewable); *United States v. Benjamin*, 812 F.2d 548, 550–53 (9th Cir.1987) (same).

## Conclusion

For the foregoing reasons, we affirm the judgments of the Superior Court.

LARSEN, J., did not participate in the consideration or decision of the case at No. 97 W.D. Appeal Docket, 1987.

McDERMOTT and ZAPPALA, JJ., concur in the result.