J-A04029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
          Appellee :
:
      v. :
:
GEORGE RIVERA :
:
          Appellant : No. 1342 EDA 2020

Appeal from the Judgment of Sentence Entered November 20, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001820-2016

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED:  MARCH 29, 2021**

Appellant, George Rivera, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for involuntary deviate sexual intercourse with a child ("IDSI"), unlawful contact with a minor, and corruption of minors ("COM").[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> When the complainant herein M.T., who was eighteen years old when she testified, was some years younger than ten years old, she lived with her mother, sisters and Appellant in a residence in Northeast Philadelphia.  Appellant was a friend of her grandmother's[…] who referred to Appellant as

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(b); 6318(a)(1); and 6301(a)(1)(ii), respectively.

a cousin, in a residence in Northeast Philadelphia. On a day when there was a small get-together at her house, M.T. and her two sisters were watching television in their mother's bedroom while lying on the bed when Appellant entered the room and asked the girls if they wanted to play a game. Appellant then said to M.T. not to look under the covers as he put his head under them right below where M.T. was laying.

Once under the blankets, Appellant removed M.T.'s pajama bottoms and her underpants and began performing cunnilingus upon her. M.T. did not understand what was going on and did not tell anyone about it at that time because she was scared to say anything. Appellant again engaged in cunnilingus with her a second time when no one was present inside the residence. This time it happened on the floor of the same bedroom and Appellant again took off her pants and underpants. M.T. did not tell anyone about this incident either for the same reason she did not do so the first time Appellant molested her.

At some point after the second incident occurred, Appellant stopped living in the residence and was thereafter incarcerated. M.T. did not tell anyone about the incidents after he no longer resided in the residence because she was still too scared to do so.

When M.T. was fourteen, she told her then boyfriend what Appellant had done to her. Soon thereafter, she told one of her little sisters that Appellant had "touched" her without going into details about the incident. Shortly before M.T. told her boyfriend and her sister that Appellant touched her, Appellant reappeared and she saw him often. After relating what occurred to her to her boyfriend and sister, she spoke to a Philadelphia Department of Human Services social worker named Crystal Zuggi and the police about the incidents. She told Ms. Zuggi that she felt relief when she finally did tell someone about them.

M.T. admitted that she could not recall how old she was when the incidents herein occurred. On cross-examination, she agreed that during Appellant's first trial, she stated that she was eight or nine years old when the incidents occurred and that they could not have occurred prior to 2008 or 2009.

On redirect examination, she testified that she was not certain about her estimation of her age concerning when the incidents occurred.

A.D., M.T.'s[,] sister recalled living together with Appellant and her family and M.T. informing her that Appellant had molested her when M.T. was younger. When M.T. told her, M.T. was crying and upset and said she had not told anyone about it. A.D. advised her to tell someone about the incidents but she did not want to so A.D. told her foster parent what M.T. related to her.

M.R., M.T.'s and A.D.'s mother, knew Appellant, the son of a friend of M.R.'s mother, since she was a child and considered him to be a relative even though he was not biologically related to her. Appellant came to live with her in 2005 or 2006 in a house on G Street in Northeast Philadelphia when her daughters were very young after he was released from prison and did not have a place to live. [Appellant] resided with them for ten or so months and left when he was again imprisoned. M.R. [and] [h]er family also left that residence at that time. M.R. was unaware of anything occurring between Appellant and M.T.

Appellant reappeared some years thereafter and M.R. observed that her daughters consciously avoided him by leaving the room. When M.R. asked M.T. why she did not want to be around Appellant, she essentially said she just did not want to.

M.R. first learned about what Appellant did when the police became involved in the case. M.R.'s mother told her what M.T. had alleged Appellant did to her.

(Trial Court Opinion, filed September 2, 2020, at 2-4) (internal citations omitted).

Appellant initially had a jury trial that resulted in a mistrial in June of 2017. On September 4, 2018, Appellant had a retrial, waiving his right to a jury, and the court convicted him of the above-mentioned crimes on that same

day.  With the benefit of a pre-sentence investigation ("PSI") report, the court sentenced Appellant to fifteen to thirty years' incarceration followed by seven years' probation on November 20, 2018.  On November 30, 2018, Appellant timely filed a post-sentence motion, and motion to modify his sentence.  In his post–sentence motion, Appellant challenged the weight of the evidence, alleging that he was incarcerated on the dates the assaults occurred.  In his motion to modify and reduce his sentence, Appellant requested that the court reconsider his sentence and impose a sentence within the guidelines or aggravated range of the sentencing guidelines.  Both of these motions were denied by operation of law on April 2, 2019.

Appellant did not file a direct appeal.  On October 18, 2019, Appellant's trial counsel filed a timely petition pursuant to the Post Conviction Relief Act ("PCRA"),[2] alleging his own ineffectiveness for failing to file a direct appeal and requesting reinstatement of Appellant's direct appeal rights *nunc pro tunc*. Appellant filed a *pro se* amended PCRA petition on November 7, 2019.  On December 14, 2019, current counsel filed a second amended PCRA petition. The court reinstated Appellant's direct appeal rights *nunc pro tunc* on July 14, 2020.  On that same day, Appellant filed a timely notice of appeal *nunc pro tunc*.  On August 25, 2020, Appellant voluntarily filed a concise statement of

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

J-A04029-21

errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3]

Appellant raises the following issues for our review:

Did the sentencing court abuse its discretion in sentencing Appellant to 15 to 30 years on the lead charge when the guideline range was 96 months to the statutory maximum +/- 12 months?

Did the sentencing court abuse its discretion in denying Appellant's post-sentence Motion in relation to the weight of the evidence because, *inter alia*, Appellant was incarcerated when Complainant's allegations occurred and Appellant presented alibi evidence to this effect?

Are Appellant's indictment and associated Bills of Information defective and, thus, the indictment should be quashed because the Bills of Information state that the alleged crimes occurred on 11/9/2015 and Complainant testified that the criminal activity occurred in 2008 or 2009, when Appellant was incarcerated, making it impossible for Appellant to defend himself against the crimes for which he was actually charged?

Did the trial court err in sustaining the Commonwealth's objections relating to animus between Complainant and Appellant because Appellant gave illegal drugs to Complainant's mother because this would have shown, *inter alia*, motive to fabricate and drug use by Complainant's mother would have likely affected her ability to remember vital dates?

(Appellant's Brief at 4).

In his first issue, Appellant argues that the court abused its discretion when it sentenced him to fifteen to thirty years' incarceration for his conviction

---

[3] The court states in its opinion that it ordered a "Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal." (**See** Trial Court Opinion at 2). However, neither the docket sheet nor the certified record indicates that the court issued this order.

- 5 -

of IDSI with a child. Appellant contends that although this sentence is within the guidelines, it is nonetheless an excessive sentence because it is beyond the guideline range of ninety-six months plus or minus twelve months. Appellant alleges that the court failed to consider that he had no other sex crime convictions and no previous violent convictions. Further, Appellant claims that the court ignored his potential for rehabilitation, and his sentence exceeded the need to protect society. Appellant concludes the court abused its sentencing discretion, and this Court must vacate and remand for resentencing. We disagree.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a timely-filed post-

sentence motion. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

When appealing the discretionary aspects of a sentence, an appellant must also invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. **Commonwealth v. Mouzon**, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008), *cert*. *denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009) (quoting **Commonwealth v. Williams**, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*)) (emphasis omitted) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Anderson**, 830 A.2d 1013, 1018 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." *Sierra, supra* at 913 (quoting *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa.Super. 1999) (*en banc*), *appeal denied*, 567 Pa. 755, 790 A.2d 1013 (2001)).

A claim that a sentence is manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Mouzon, supra* at 435, 812 A.2d at 627. Bald allegations of excessiveness, however, do not raise a substantial question to warrant appellate review. *Id.* at 435, 812 A.2d at 627. Rather, a substantial question will be found "only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process...." *Id.* "An allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (quoting *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super. 1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995)). As well, where the sentencing court had the benefit of a PSI report, we can presume the court was aware of and weighed relevant information regarding a defendant's character along with mitigating statutory factors.

***Commonwealth v. Tirado***, 870 A.2d 362, 366 n.6 (Pa.Super. 2005).

Instantly, Appellant's motion to modify and reduce sentence did not include his specific argument that the court imposed a manifestly excessive sentence, so that particular claim is waived. ***See Commonwealth v. Griffin***, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013) (explaining objections to discretionary aspects of sentence are waived if they are not raised at sentencing hearing or in timely filed post-sentence motion). Additionally, although Appellant properly preserved his claim that the court did not consider his personal history and circumstances, this claim does not raise a substantial question. ***See Cruz-Centeno, supra***. In any event, the court had the benefit of a PSI report, (***see*** N.T. Sentencing Hearing, 11/20/18, at 4), so we can presume the court considered the relevant information and mitigating factors. ***See Tirado, supra***.

Moreover, the record shows the parties agreed Appellant's offense gravity score was fourteen and Appellant had a prior record score of two. (N.T., 11/20/18, at 4). The Commonwealth explained that the applicable guidelines were "96 to the statutory limit plus or minus 12 for IDSI of a child. The [statutory] max[imum] is 20 to 40 years, indicating that the legislature takes into account the seriousness of this incident." ***Id.*** at 7. Further, the court explained its sentencing decision as follows:

> Appellant was a repeat offender who took advantage of a vulnerable child and the sentence reflects the heinousness of his crime. In addition, a lengthy sentence was deemed necessary to protect the public from Appellant and his

inability to live a law-abiding life.

Also, this [c]ourt did consider Appellant's rehabilitative needs. During the sentencing hearing, this [c]ourt carefully listened as Appellant's counsel set forth mitigating circumstances calling for a reduced sentence. The [c]ourt also reviewed the pre-sentence reports, which outlined Appellant's life circumstances, before deciding upon the sentence it imposed. Although this [c]ourt did not parrot every word in 42 Pa.C.S. § 9721(b), the certified record reveals it thoroughly considered appropriate factors prior to imposing sentence. This [c]ourt witnessed appellant during the guilty plea hearing and properly considered the nature and circumstances of his offenses, as well as his personal history and sincere expression of remorse.

Finally, Appellant's sentence was not excessive in light of the seriousness of the underlying matters. In fact, in this [c]ourt's view the aggregate sentence manifested leniency given the underlying facts and the importance of protecting the public from criminal violence. In a case where the maximum imposable sentence was in excess forty years' incarceration, it could be said that the sentence was too low given the facts of the case. In any event, this [c]ourt considered all relevant factors in deciding upon a sentence.

(Trial Court Opinion at 8-10) (internal citations omitted). Here, the record confirms the court properly balanced Appellant's circumstances with the severity of the offenses and the need to protect the public. Based upon the foregoing, Appellant is not entitled to relief on his challenge to the discretionary aspects of sentencing.

In his second issue, Appellant argues the verdict was against the weight of the evidence because Appellant was incarcerated on the dates which M.T. stated that the assaults occurred. Specifically, Appellant contends that M.T. testified that these assaults occurred in 2008-2009, when she was eight or

nine years old. Appellant reasons that he could not have committed these assaults because he was incarcerated from February 24, 2007, until December 16, 2011. Appellant concludes that the verdict based upon M.T.'s testimony shocked the conscience, and therefore, he should be awarded a new trial. We disagree.

When examining a challenge to the weight of the evidence, our standard of review is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. Our appellate courts have repeatedly emphasized that one of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa.Super. 2007), *aff'd*, 597 Pa. 344, 951 A.2d 329 (2008) (internal citations and quotation marks omitted).

> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert*. *denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(internal citations omitted).

Instantly, Appellant's weight claim focuses on M.T.'s testimony that "Appellant engaged in vaginal touching and oral sex with [M.T.] when [M.T.] was 8 or 9 years old in 2008 or 2009." (Appellant's Brief at 15). Nevertheless, this testimony took place at Appellant's first trial. During Appellant's re-trial, while M.T. admitted that previously she stated the assaults occurred when she was eight or nine years old (**see** N.T., Trial, 9/4/18, at 26-27), she testified that she did not recall the year, or how old she was when Appellant sexually assaulted her (**see id.** at 12, 14, 18).

At Appellant's re-trial, M.T. testified that the assaults occurred while she lived at her mother's residence on G Street in Philadelphia. (**Id.** at 11-14). Appellant also lived at that residence with her when the assaults occurred. (**Id.** at 14). M.T. stressed that although she did not recall her exact age when the assaults occurred, she knew that she could not have been more than ten years old at the time. (**Id.** at 19). At ten years old, M.T. resided with her grandmother at a different location. (**Id.**). M.T. also testified that the assaults ended when Appellant went to prison. (**Id.** at 22). M.T.'s mother testified that Appellant resided with M.T. at the G Street residence between 2005 and 2006. (**Id.** at 40). According to this timeline, the assaults occurred between 2005 and 2006, when Appellant resided at the G Street residence, at least one year before Appellant went to prison in 2007.

The trial court addressed Appellant's challenge to the weight of the

evidence as follows:

> This [c]ourt rejected Appellant's weight claim because [M.T.'s] testimony, considered in its entirety, positively established Appellant did the acts she ascribed to him. This [c]ourt found her testimony wholly believable despite some inconsistencies in it. Those inconsistencies were not weighty enough for this [c]ourt to conclude that [M.T.] lied about the sexual assaults.
>
> In addition, this [c]ourt considered that [M.T.] previously indicated that she was sexually assaulted during a period of time when Appellant was incarcerated but took into consideration [M.T.'s] age when the incidents occurred when deciding on the verdict and whether [M.T.] presented credible testimony. The fact that [M.T.] could not accurately recall when the incidents occurred is not surprising given what occurred to her, acts which she certainly did not understand and which likely caused some shock to her, shock which could have impeded her ability to remember. Appellant's incarceration and [M.T.'s] prior indications about when the incidents occurred did not shake this [c]ourt's credibility determination regarding [M.T.] especially because [M.T.] indicated that the assaults stopped when Appellant was incarcerated, she was certain that the incidents occurred before she and her family moved at a time when Appellant still resided with her, and she provided significant detail when describing the incidents.

(Trial Court Opinion at 10, 11) (internal citations omitted). We see no reason to disturb the trial court's conclusions and emphasize that the finder of fact is exclusively responsible for credibility determinations. *See Rabold, supra*. On this record, the trial court did not palpably abuse its discretion in ruling on the weight claim, and Appellant is not entitled to relief on this basis. *See Champney*, *supra*.

In his third issue, Appellant argues that the criminal information incorrectly stated that the criminal conduct occurred on November 9, 2015,

- 13 -

instead of 2008-2009. Appellant alleges this error made it impossible for him to defend himself because no evidence supported the timeframe listed in the information. Appellant contends that his conviction cannot stand based upon a defective information.[4] Appellant insists that although he failed to object to this error, and such a failure generally leads to waiver, this claim challenges the legality of his sentence which cannot be waived. Appellant concludes that this Court should order a new trial based on the defective criminal information. We disagree.

Preliminarily, to preserve a claim of error for appellate review, a litigant must make a specific objection before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. *Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750 (2005), *cert*. *denied*, 549 U.S. 832, 127 S.Ct. 58, 166 L.Ed.2d 54 (2006) (reiterating that absence of specific and contemporaneous objection to error waives issue on appeal). *See also* Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived

---

[4] Appellant relies on *Commonwealth v. Walters*, 378 A.2d 993 (Pa.Super. 1977), for the proposition that if an indictment is defective, the conviction cannot stand. In *Walters*, the defendant filed a motion to quash the indictment, because the Commonwealth did not include language referring to an element of the crime charged. *Id.* The *Walters* Court reversed the defendant's conviction holding that despite the indictment's citation to the applicable statutory section, the indictment was defective where it did not include all of the statutory elements. *Id.* Appellant does not allege that the information in this case failed to include an element of the offenses, so *Walters* is not dispositive in this case.

- 14 -

and cannot be raised for the first time on appeal"); ***Commonwealth v. Jackson***, 215 A.3d 972, 977-78 (Pa.Super. 2019) (holding appellant waived challenge to amendment to criminal information where he failed to articulate specific objection at appropriate stage of proceedings before trial court).

Challenges to the legitimacy of an information must be raised in a pre-trial motion to quash the information. ***See Commonwealth v. Kimble***, 470 A.2d 1369, 1375 (Pa.Super. 1984) (citing Pa.R.Crim.P. 306 (now Rule 578)). Failure to file an omnibus pre-trial motion to quash an information results in waiver. ***See Commonwealth v. Martin***, 694 A.2d 343, 344 (Pa.Super. 1997). ***See also Commonwealth v. Gemelli***, 474 A.2d 294 (Pa.Super. 1984). An exception to the general waiver rules exists, however, in circumstances implicating the legality of the sentence. ***Commonwealth v. Foster***, 609 Pa. 502, 522, 17 A.3d 332, 345 (2011).

In ***Commonwealth v. Spruill***, 622 Pa. 299, 80 A.3d 453 (2013) (plurality), the defendant was charged with several counts of aggravated assault. The information listed the counts as first-degree felonies ("F1"); however, "the descriptions in the information encompassed the elements of both F1 aggravated assault and second-degree felony ('F2') aggravated assault." ***Id.*** at 302, 80 A.3d at 455. The trial court convicted the defendant of F2 aggravated assault and later sentenced her. At no time did the defendant raise an objection in the trial court to the grading of her conviction as a F2. Instead, the defendant first presented that claim in her Rule 1925(b)

statement after she appealed her judgment of sentence to the Superior Court.

On appeal, the defendant argued that "a claim that the trial court improperly imposed a sentence on an offense lower than the offense charged in the criminal information goes to the legality of the sentence, and thus cannot be waived." *Id.* at 305, 80 A.3d at 457 (citation omitted). In its opinion announcing the judgment of the Court, the Supreme Court disagreed with the defendant, and concluding that she waived her claim because it involved the defendant's underlying conviction—not her sentence. *Id.* at 312, 80 A.3d at 461.

Instantly, Appellant did not file a pre-trial motion to quash the criminal information, and advances his current claim for the first time on appeal. Appellant's sole claim concerning the deficiency in the information involves the incorrect date listed for when the crimes occurred. Under these circumstances, Appellant's challenge to the information appears to implicate only his underlying conviction at trial, and not the legality of his sentence. *See id.* Therefore, this issue is waived on appeal. *See May, supra*; *Jackson, supra*; Pa.R.A.P. 302(a).

Even if Appellant preserved this claim, it would merit no relief. Pennsylvania Rule of Criminal Procedure 560 provides, in pertinent part:

**Rule 560.  Information: Filing, Contents, Function**

\*     \*     \*

(B)  The information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains:

\* \* \*

(3)  the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient;

\* \* \*

Pa.R.Crim.P. 560(B)(3).

This Court has long recognized that the purpose of the information is to put a defendant on notice of the crimes for which he is charged, and to provide sufficient notice to allow the opportunity to prepare a defense, and to define the issues for trial. **See Commonwealth v. Shamberger**, 788 A.2d 408, 419-20 (Pa.Super. 2001), *appeal denied*, 569 Pa. 681, 800 A.2d 932 (Pa. 2002).  It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty." **Commonwealth v. Jette**, 818 A.2d 533, 535 (Pa.Super. 2003).  However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a single specific date of an alleged crime. **Commonwealth v. Devlin**, 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975).  Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." **Commonwealth v. Ohle**, 503 Pa. 566, 588, 470

A.2d 61, 73 (1983).

"[T]he Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M.*, *Sr*., 926 A.2d 984, 990 (Pa.Super. 2007) (quoting *Commonwealth v. Groff*, 548 A.2d 1237, 1242 (Pa.Super. 1988)). This is especially true when the case involves sexual offenses against a child victim. *Id.* "It is well settled that a purported variance [in the information] will not be deemed fatal unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Commonwealth v. Jones*, 590 Pa. 202, 238, 912 A.2d 268, 289 (2006).

Instantly, the information lists all of the offense dates as "11/09/2015." (Information, filed 2/29/16, at 1-2). None of the testimony mentioned any criminal activity occurring in 2015, thus, the date listed in the information is incorrect. Approximately one year after the information was filed, Appellant filed a notice of alibi stating that "[i]f [Appellant] presents [an alibi] defense, the claim will be that during the time of the alleged offense when the complainant was 8, 9 or 10 years old, [Appellant] was incarcerated and serving a state sentence." (Notice of Possible Alibi Defense, filed 6/23/17). As indicated by his alibi and his argument at trial, Appellant focused only on the years from 2007 to 2011, when he was incarcerated. Appellant failed to

- 18 -

argue or substantiate how the information's incorrect date of 2015 prejudiced him or affected his defense. Thus, Appellant had notice of the crimes charged, and notice to prepare a defense, and to define the issues for trial. *See Shamberger, supra.*

Further, the trial court explained:

> Instantly, it cannot be contested that the dates are not an element of IDSI and that the Commonwealth filed the charges within the statute of limitations. Moreover, although the Bill of Information listed a specific date, it is clear from reading the Bill of Information that the date listed was the date when the complainant first brought the charges and that the incidents occurred well prior thereto by the inclusion of the charge of IDSI of a child less than thirteen years of age. By including that charge Appellant surely was aware that the crimes he was accused of committing occurred well prior to the date set forth in the Bills of Information.

(Trial Court Opinion at 13).

Further, this was Appellant's second trial, the first having resulted in a hung jury. Thus, at the time of the second trial, Appellant was well aware that the charges alleged occurred while Appellant lived with M.T. at the G Street residence. *See Jones, supra* (holding that challenge to information fails where defendant and his counsel had actual knowledge of charges). Consequently, Appellant was aware before trial that the Commonwealth would be presenting evidence that the assaults happened prior to 2015, the date listed in the information. The error in the information's date did not involve an element of surprise prejudicial to Appellant's efforts to prepare his defense, preclude Appellant from anticipating the prosecution's proof, or impair a

substantial right. ***Jones, supra.*** Our review of the record confirms that Appellant had sufficient notice to meet the charges and prepare a defense, which he in fact did present at the bench trial. Thus, Appellant's third issue challenging the adequacy of the information lacks merit.

In his fourth issue, Appellant argues the court erred in sustaining the Commonwealth's objection during Appellant's cross-examination of M.T.'s mother. Specifically, Appellant alleges the court prevented him from questioning M.T.'s mother about her drug use. Appellant contends that this evidence would discredit M.T.'s mother's memory, and elicit M.T.'s bias as a motive for fabricating her testimony.[5] Appellant concludes that this Court should remand the case for a new trial. We disagree.

---

[5] To the extent Appellant argues the court failed to issue the "drug usage and effect" charge, Appellant failed to indicate precisely where in the record he requested this charge, and he failed to cite any authority supporting his position. Additionally, Appellant did not preserve this claim in his Rule 1925(b) statement. Thus, this claim is waived. ***See*** Pa.R.A.P. 2119. ***See also*** Pa.R.A.P.1925(b)(4)(vii). Appellant also mentions the Confrontation Clause with respect to this issue, however, he fails to raise the Confrontation Clause issue in his Rule 1925(b) statement. Thus, this claim is also waived. ***See id.*** Further, any Confrontation Clause argument is undeveloped. "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa.Super. 2007) (citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Id.*** If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. ***See Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa.Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). Appellant failed to include a

Our standard of review of a trial court's admission or exclusion of evidence is well established:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted).  Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason.  *Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa.Super. 2013).

Pennsylvania Rule of Evidence 611(b) addresses the scope of cross-examination, stating: "Cross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b).  "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness' motive for testifying.  The

meaningful discussion of his Confrontation Clause argument, and he failed to include any citations to case law and the record, thus, this claim is waived.

scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." ***Commonwealth v. Chmiel***, 585 Pa. 547, 592, 889 A.2d 501, 527 (2005) (citation and quotation marks omitted).

Instantly, Appellant's counsel cross-examined M.T.'s mother as follows:

> [APPELLANT'S COUNSEL]: Okay. **And were you using any illegal substances at the time**?
>
> [THE COMMONWEALTH]: Objection.
>
> THE WITNESS: **No illegal**.
>
> THE COURT: All right. She's answered the question.
>
> THE WITNESS: Was [Appellant]? Do you want me answer that?
>
> THE COURT: There's no question to answer, ma'am. Proceed, counsel.
>
> [APPELLANT'S COUNSEL]: Okay.
>
> [APPELLANT'S COUNSEL]: **Well, when did you begin using PCP**?
>
> [THE COMMONWEALTH]: Objection.
>
> THE COURT: Sustained.
>
> THE WITNESS: **I don't use PCP**.
>
> THE COURT: Don't answer it. I sustained the objection.
>
> [APPELLANT'S COUNSEL]: Your Honor, it goes to—the witness has testified that her three daughters did not like my client because of this alleged incident, him being the perpetrator of this alleged incident. And there's other

- 22 -

evidence to show that the daughters did not like [Appellant] because there was some drug activity going on between my client and [M.T.'s] mother.

THE WITNESS: Can I speak on that, please?

THE COURT: No, you can't. I've sustained the objection.

[APPELLANT'S COUNSEL]: And, ma'am do you understand that [M.T.'s sister] specifically did not think that [Appellant] was a very nice person because he would give you drugs?

[THE COMMONWEALTH]: Objection.

THE WITNESS: [M.T.'s sister] doesn't like [Appellant] because [Appellant] touched her.

THE COURT: Well, I'm going to overrule that objection.

THE WITNESS: Y'all got to understand. I don't really think I should be sitting here looking at him.

THE COURT: Ma'am you are sitting there. The question was, **did he give you drugs**[?]

THE WITNESS: Did he give me drugs?

THE COURT: Yes.

THE WITNESS: **No**. I'm a grown woman. If I did, I did [it] on my own. It wasn't because somebody put—

THE COURT: Very well. That's your answer. Thank you.

[APPELLANT'S COUNSEL]: Your Honor, actually the question—I wanted to know **whether she was aware that [M.T.'s sister], her daughter, did not like my client because of the drug activity between my client and the mother**.

[THE COMMONWEALTH]: I'm going to renew my objection.

> THE COURT: Objection sustained. **There's no evidence of that** let's proceed.
>
> [APPELLANT'S COUNSEL]: No further questions.

(N.T. Trial, at 44-46) (emphasis added).

Instantly, in addressing this claim, the trial court explained:

> [I]f counsel wanted to elicit testimony indicating that [M.T.] accused Appellant of assaulting her because he gave drugs to her mother he should have asked [M.T.] and not her mother who would have had to engage in speculation whether or not that was true. [Appellant's] counsel produced no evidence and did not lay any foundation showing that the premise of his question had a factual basis. Moreover, this [c]ourt permitted the mother to answer a similar question and it is apparent that [Appellant's] counsel did not like the response.
>
> Therefore, the line of questioning sought wholly speculative testimony and was properly precluded and moreover, this [c]ourt did permit [Appellant's] counsel to query [M.T.'s] mother about her drug use.

(Trial Court Opinion at 16).

Here, M.T.'s mother answered the questions concerning illegal drug use, and Appellant failed to question **M.T.** on whether she had animosity toward Appellant over his alleged drug activity with her mother. We see no reason to disrupt the trial court's analysis. *See Stephens, supra*. Thus, Appellant's fourth issue on appeal warrants no relief. *See Chmiel, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/21