J-A05035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT PETER CARTALEMI | : | |
| | : | |
| Appellant | : | No. 1817 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 6, 2023
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001130-2021

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                         **FILED MARCH 15, 2024**

Robert Peter Cartalemi ("Cartalemi") appeals from the judgment of sentence imposed following his conviction for unlawful interception of a communication pursuant to the Wiretapping and Electronic Surveillance Act ("the Wiretap Act"), 18 Pa.C.S.A. §§ 5701-5782.[1]  We affirm.

The relevant factual and procedural history can be summarized as follows.  Cartalemi and Michael Corbo ("Corbo") are the co-owners of Muscle, Inc. ("Muscle"), a gym located in Stroudsburg, Pennsylvania.   The complainant, Scott Schweinfurth ("Schweinfurth"), is a personal trainer and the owner of Transform Personal Training ("Transform").   Cartalemi and Schweinfurth were close friends and former business partners.  Pursuant to a verbal agreement, Cartalemi and Corbo permitted Schweinfurth and his

---

[1] **See** 18 Pa.C.S.A. § 5703(1).

brother, Steven Schweinfurth ("Steven"), to train Transform clients at Muscle's facility without requiring Schweinfurth to pay fees or rent to Muscle. Cartalemi and Corbo also permitted Schweinfurth to sell Transform merchandise in Muscle's store. At some point, Cartalemi and Corbo began revoking these privileges.

In June 2019, Cartalemi and Corbo asked Schweinfurth to attend a meeting at Muscle. *See* N.T., 11/16/22, at 23, 37-40, 41. The meeting ultimately took place on June 18, 2019. *Id*. at 24. Cartalemi and Corbo asked Marc Gaudet ("Gaudet"), a Muscle employee, to attend the meeting as a witness. *Id*. at 82. Steven asked to attend the meeting, but his request was denied, and he was told to sit at the front desk and wait. *Id*. at 106. The meeting took place in an office located in Muscle's facility which was used for various purposes. *Id*. at 37. The door to the office was usually open; however, those familiar with the office generally understood that, when the door to the office was closed, no one could enter. *Id*. at 38-39, 110. Schweinfurth and Steven used the office for Transform business and to conduct private consultations with prospective Transform clients. *Id*. at 37-39, 109. During those private client consultations, the office door would be closed. *Id*. at 37. A computer owned by Schweinfurth and used for Transform business was set up in the office; however, the computer was also used by Cartalemi and Corbo. *Id*. at 107. Prior to starting the meeting with Schweinfurth, Cartalemi or Corbo closed the door to the office. *Id*. at 40.

During the meeting, Cartalemi and Corbo informed Schweinfurth that they were terminating the verbal agreement, cancelling all of Transform's privileges at Muscle, and offering Schweinfurth a written employment contract to be an employee of Muscle whereby he would earn twenty-five dollars per hour training Muscle clients, and ten dollars per hour while working at the front desk. *See id*. at 23, 31, 33-34; *see also id*. at Commonwealth Exhibit 10, at 2. Cartalemi and Corbo made clear that their offer to Schweinfurth was being made on a "take it or leave it" basis. *See id*. at Commonwealth Exhibit 10, at 2. After a heated discussion, Schweinfurth declined the offer, and, prior to leaving, removed his computer and other equipment from Muscle's facility. *See* N.T., 11/16/22, at 43.

In October of 2019, after Schweinfurth found a new location for Transform, Steven helped him set up the computer that Schweinfurth removed from the office at Muscle. *See id*. at 106. While setting up the computer, Steven found a file containing an audio recording of the June 18, 2019 meeting. *Id*. at 43-45.

Schweinfurth and Steven thereafter discussed the matter with a long-term Transform client, Detective Wendy Serfass ("Detective Serfass"), who was employed by the Monroe County District Attorney's Office ("MCDAO"). *Id*. at 65. Steven emailed Detective Serfass the recording, and thereafter backed up the computer to a portable hard drive before he wiped the computer's original hard drive. *Id*. at 108-12.

The MCDAO referred the investigation to the Pennsylvania State Police due to Detective Serfass' indirect involvement. *Id*. at 156. Detective Serfass provided the recording to Pennsylvania State Trooper David Hudzinski ("Trooper Hudzinski"), who commenced an investigation. *Id*. Trooper Hudzinski interviewed Schweinfurth, Steven, Corbo, and Gaudet. *Id*. at 157, 160. During his interview, Corbo informed Trooper Hudzinski that Cartalemi recorded the meeting. *See* N.T., 11/1/21, at 12-16; *see also id*. at Commonwealth Exhibit 2, at 29-30. Trooper Hudzinski obtained the portable hard drive from Schweinfurth, and subsequently presented the case to the MCDAO. *See* N.T., 11/16/22, at 160. The MCDAO thereafter charged Cartalemi with, *inter alia*, unlawful interception of a communication.[2]

Cartalemi filed an omnibus pretrial motion seeking, *inter alia*, to disqualify the MCDAO based on a conflict of interest due to its employment of Detective Serfass. The trial court determined that Cartalemi failed to demonstrate any conflict, and denied the motion. The matter thereafter proceeded to a jury trial.

At trial, Cartalemi asserted that the best evidence rule required exclusion of the recording as it was a copy that did not reflect the actual dialog

_____

[2] In February 2020, while the investigation was ongoing, Muscle filed a civil lawsuit against Schweinfurth, Transform, and Detective Serfass. Based on averments made by Cartalemi in his pleadings in the civil lawsuit, the MCDAO additionally charged Cartalemi with unsworn falsification to authorities. However, the jury acquitted Cartalemi of that charge.

at the meeting and could not be properly authenticated. *See id*. at 25-28. The trial court overruled the objection and allowed the recording to be admitted into evidence and played for the jury. Schweinfurth testified that the recording accurately reflected the meeting held on June 18, 2019. *Id*. 31-34. At the conclusion of trial, the jury found Cartalemi guilty of unlawful interception of a communication. Cartalemi filed pre-sentence motions which the trial court denied. On July 6, 2023, the trial court sentenced Cartalemi to three years of probation. Cartalemi filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Cartalemi raises the following issues for our review:

1. Was the evidence presented at trial by the Commonwealth legally insufficient to sustain a verdict of guilty as to the charge of violating the . . . Wiretap Act . . . in that the Commonwealth failed to establish beyond a reasonable doubt that [Schweinfurth] had a "reasonable expectation of privacy" such that the recording qualified as an "oral communication" under the Wiretap Act?

2. Did the trial court err when it admitted, over [Cartalemi's] objection, the recording at issue, in violation of the best evidence rule?

3. Did the trial court err when it failed to order the recusal of the [MCDAO] from prosecuting the case?

Cartalemi's Brief at 5 (unnecessary capitalization omitted, issues reordered for ease of disposition).

In his first issue, Cartalemi challenges the sufficiency of the evidence supporting his conviction for unlawful interception of a communication. A challenge to the sufficiency of the evidence presents a question of law for

- 5 -

which our standard of review is *de novo* and our scope of review plenary. ***See***

***Commonwealth v. Johnson***, 236 A.3d 1141, 1152 (Pa. Super. 2020). When

considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013)

(internal quotations and citations omitted). Importantly, "the trier of fact

while passing upon the credibility of witnesses and the weight of the evidence

produced, is free to believe all, part or none of the evidence."

***Commonwealth v. Orr***, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

A person is guilty of unlawful interception of a communication if he or

she "intentionally intercepts, endeavors to intercept, or procures any other

person to intercept or endeavor to intercept any wire, electronic or oral communication[.]" 18 Pa.C.S.A. § 5703(1).

The Wiretap Act defines an oral communication as: "any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S.A. § 5702. To establish a violation of the Wiretap Act, the claimant must demonstrate that he or she possessed an expectation that the communication would not be intercepted and that such expectation was justifiable under the circumstances. *See Commonwealth v. Mason*, 247 A.3d 1070, 1081 (Pa. 2021). This Court has explained:

> An expectation of privacy will be found to exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. In determining whether a person's expectation of privacy is legitimate or reasonable, the totality of the circumstances must be considered[,] and the determination will ultimately rest upon a balancing of the societal interests involved.

*Commonwealth v. Bostick*, 958 A.2d 543, 552 (Pa. Super. 2008) (citations omitted).

Cartalemi argues that the Commonwealth failed to prove beyond a reasonable doubt that Schweinfurth had the requisite reasonable expectation of privacy in the meeting for the recording to constitute an oral communication under the statute. Cartalemi asserts "the sole purpose of . . . Gaudet in the meeting was to act as a human tape recorder. He was there solely as a witness to the entire proceeding." Cartalemi's Brief at 21. Cartalemi insists

that Gaudet's presence in the meeting, as an unrelated and uninvolved party, negated Schweinfurth's potential expectation of privacy in the meeting. Cartalemi claims that, because the meeting was conducted in the presence of Gaudet, the evidence was insufficient to establish an oral communication.

The trial court considered Cartalemi's first issue and concluded that it lacked merit. The court reasoned:

> . . . It is clear from the record that there was a meeting in an office; this meeting was intended to be private as it was behind a closed door that excluded some while including others; during this meeting, there w[ere] verbal communications made, and these verbal communications when made were intercepted in the form of a recording saved on the desktop computer that was present in the office where the meeting was occurring. Although contested at trial, there was also evidence that [Cartalemi] was, in fact, the individual who made the interception. So, the question comes down to, . . . was the presence of a third-party witness at the cited meeting adequate to defeat the Wiretap Act's requirement that there be an expectation of privacy? This is a determination for the trier of fact because the standard is a subjective standard of what a reasonable person would believe to be private and is societally accepted as a reasonable expectation. The jury adjudged [Schweinfurth's] expectation, as the trier of fact they are in the best position to determine credibility, and determined such an expectation was met. This court, therefore, as reflected herein and on the record, would find the jury's determination controlling. From the facts presented, the third-party witness did not defeat that expectation of privacy, and as such, we find this issue is without merit.

Trial Court Opinion, 11/2/23, at 11-12 (unnecessary capitalization omitted).

Viewing the evidence in the light most favorable to the Commonwealth, and giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, we conclude that Cartalemi's conviction is supported by sufficient evidence. Schweinfurth testified to his subjective expectation that

the meeting was private due to location of the meeting in an office that was sometimes used for private meetings, the exclusion of other people from the meeting, and the fact that the office door was closed during the meeting which signaled to others that they could not enter the office. *See* N.T., 11/16/22, at 34, 37-40. In our view, the presence of Gaudet, as another Muscle employee, did not alter the otherwise objectively private nature of the meeting. Indeed, as a Muscle employee, Gaudet would have known that because the office door had been closed, the meeting was intended to be private and that no one else was permitted to enter. Thus, when considering the totality of the circumstances, the evidence was sufficient to establish that Schweinfurth had a subjective expectation of privacy regarding the matters discussed during the meeting and that such expectation was reasonable. *See Bostick*, 958 A.2d at 552; *see also Commonwealth v. Cruz*, 166 A.3d 1249, 1255-56 (Pa. Super. 2017) (observing that "[a]ppellate courts have held that employees have a reasonable expectation of privacy in certain areas of their workplace"). Accordingly, Cartalemi's first issue entitles him to no relief.

In his second issue, Cartalemi challenges the trial court's decision to admit the recording at trial. In reviewing a challenge to the admissibility of evidence, our standard of review is well-settled and very narrow:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of

discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted).

Cartalemi contends that the trial court's admission of the recording violated the best evidence rule, which provides that: "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. An "original" recording is defined as the "recording itself or any counterpart intended to have the same effect by the person who executed or issued it." Pa.R.E. 1001(d). However, our rules of evidence provide that a duplicate of the original is generally admissible: "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. A "duplicate" is defined as "a copy produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e). Additionally, "[a]n original is not required and other evidence of the content of a . . . recording . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith

. . ." Pa.R.E. 1004(a). This Court has found duplicates of voice recordings to be admissible when the original recording is unavailable. ***See Commonwealth v. Fisher***, 764 A.2d 82, 89-90 (Pa. Super. 2000) (holding that, because the original recorded messages were not available at the time of trial, through no fault of the Commonwealth, the tape-recorded copies were also admissible). The best evidence rule intends to operate alongside the rules of discovery and uncover any potentially fraudulent duplicates. ***See*** Pa.R.E. 1003 Cmt.

Cartalemi contends that, although the recording was central to the Commonwealth's case, Trooper Hudzinski took no steps to secure the original recording from the computer's hard drive. Cartalemi maintains that, even though Trooper Hudzinski knew that Steven possessed the original hard drive which housed the original recording, the trooper did not request the original recording from Steven or advise Steven to preserve it. Cartalemi points out that it took Trooper Hudzinski more than fourteen months to retrieve the portable hard drive—to which the recording had been transferred—from Steven. According to Cartalemi, Trooper Hudzinski's dilatory actions in attempting to obtain the evidence central to the case constitutes bad faith. Cartalemi further argues that the recording admitted at trial was not a duplicate of the original recording because the recording admitted at trial was only seventeen minutes long, whereas testimonial evidence presented at trial estimated the length of the meeting as approximately thirty minutes.

The trial court addressed Cartalemi's second issue and determined that it lacked merit. The court reasoned:

> First, strictly speaking, the original cannot be obtained. As Rule 1004 reflects, "an original is not required and other evidence of the content of a [. . .,] recording [. . .] is admissible if: [. . .] all the originals are lost or destroyed, and not by the proponent acting in bad faith." [Pa.R.E. 1004(a).] As the record reflects, the Commonwealth's witness, Steven . . ., acting neither in good or bad faith, deleted the recording. The [best evidence] rule further reflects that when production of the original is not required, the proffering party need not offer a duplicate even if that is available; the proffering party may present any evidence, including oral testimony. Prior to deleting it, however, [Steven] used an external hard drive to create a backup of the original, attesting he did not alter the backup in any way. The normal motivation of a party to produce the most convincing evidence, together with the availability of discovery to uncover fraud, seems adequate to control abuse. [Cartalemi] had an opportunity to inspect [the external hard drive,] but did not.
>
> Secondly, this evidence could be seen as a duplicate under the rules. If the evidence is determined to be a duplicate . . ., meaning it was not intended to have the same effect as the original, then under Rule 1003, this evidence again would be admissible. Implicit in raising the best evidence objection is the idea of calling into question authenticity. If the opposing party raises a genuine question as to the authenticity or the fairness of using a duplicate, the trial court may require the production of the original under this rule. [*See*] Pa.RE. 1003. It is essential to note the language used. The drafters chose to use "may" and not "shall," leaving it to the court's discretion. As it stands, the Commonwealth adequately authenticated the evidence, leaving no need to produce the original.
>
> Thirdly, if the evidence were being presented as a counterpart, . . . meaning it was intended to have the same effect as the writing or recording itself, then this evidence would squarely fall within the meaning of "original." Pa.R.E. [] 1001(d). As such, this evidence would be considered admissible because the "best evidence rule," above all else, desires an original, and therefore, under Rule 1002, this evidence would be considered

admissible as it would be considered an original.

Trial Court Opinion, 11/2/23, at 6-8 (citations and unnecessary capitalization omitted).

We discern no abuse of discretion by the trial court in admitting the recording over Cartalemi's objection. The trial court found no merit to Cartalemi's contentions that Trooper Hudzinski acted in bad faith and that the recording was not authentic due to its length. The best evidence rule calls for the production of an original recording when one is available, and the record before us reflects that the original recording was not available and its destruction did not occur in bad faith. Further, Schweinfurth testified to the authenticity of the duplicate recording, and there was no evidence that the duplicate provided was not an exact replica of the original recording. Accordingly, Cartalemi's second issue merits no relief.

In his third issue, Cartalemi challenges the trial court's order denying its pretrial motion to disqualify the MCDAO based on an alleged conflict of interest due to its employment of Detective Serfass. Our standard of review is well-settled.

> Absent an abuse of discretion, we are constrained to accept the trial court's finding that there was no conflict of interest. **See Commonwealth v. Khorey**, . . . 555 A.2d 100, 110 ([Pa.] 1989). A "prosecution is barred when an actual conflict of interest affecting the prosecutor exists in the case; under such circumstances a defendant need not prove actual prejudice in order to require that the conflict be removed." [**Commonwealth v. Eskridge**, [604 A.2d 700], [] 702 (Pa. 1992)]. Mere allegations of a conflict of interest, however, are insufficient to

require replacement of a district attorney. ***See Commonwealth v. Mulholland***, . . . 702 A.2d 1027, 1037 ([Pa.]1997).

***Commonwealth v. Stafford***, 749 A.2d 489, 494 (Pa. Super. 2000).

Cartalemi contends that the trial court should have disqualified the MCDAO because "the charges in the instant matter are part and parcel with the civil proceedings to which one of the [MCDAO's] detectives is a party." Cartalemi's Brief at 25. Cartalemi points to Trooper Hudzinski's testimony that he was assigned to investigate this matter because a MCDAO detective was indirectly involved. Cartalemi asserts that Detective Serfass was "not only a witness as part of the chain of custody of the alleged illegal recordings, but also a party to the civil proceedings which surround the recordings." ***Id***. at 26. On this basis, Cartalemi argues that the trial court should not have permitted the MCDAO to prosecute the instant criminal action.

The trial court considered Cartalemi's third issue and determined that it lacked merit. The court provided the following basis for its determination:

> Despite [Cartalemi's] strong language decrying the "untenable" situation posed by the Commonwealth's choice to prosecute the charges against him, he fails to articulate the actual conflict at issue concerning the prosecuting attorneys. The court presumes that [Cartalemi] finds the conflict to be that because Detective] Serfass is employed by the [MCDAO], the individual attorneys involved in this case – District Attorney Christine and Assistant District Attorney Tomcho – would be impermissibly motivated to pursue the case against him so that Detective Serfass would be better positioned to prevail in the civil suit. [Cartalemi] has not provided any evidence that Attorney Christine or Attorney Tomcho have, in fact, any interest in the result of the civil case beyond a work colleague being a party. While, as noted by [Cartalemi], it is "clear" that Det[ective] Serfass "is not only a witness as part of the chain of custody of the alleged, illegal

- 14 -

> recordings, but also a party to the civil proceedings which surround the recordings[,]" it is not "clear" from [Cartalemi's] brief why that fact requires the case be transferred to the Pennsylvania Office of Attorney General.
>
> . . . There is no direct conflict pled here. [Cartalemi's] claims are more accurately described as "mere allegation[s] or appearance of impropriety" held . . . to be insufficient to establish an actual conflict of interest and require disqualification. Because [Cartalemi] has failed to allege any actual, current conflict necessitating the case be turned over to the Pennsylvania Office of Attorney General we will deny his motion.

Trial Court Opinion, 11/2/23, at 12 (*quoting* Trial Court Opinion, 4/22/22, at 11-12 (unnecessary capitalization omitted)).

We discern no abuse by the trial court in denying Cartalemi's pretrial motion to disqualify the MCDAO. Cartalemi has not identified any connection between the civil proceedings and this case other than the fact that Serfass was named as a defendant in the civil proceedings and was a witness in the instant criminal proceedings. Notably, Cartalemi has not disclosed the nature of the civil proceedings, or identified any claim or averment made in that action. To be sure, Cartalemi has not demonstrated that an actual conflict of interest affecting one of the prosecutors exists in this case. Instead, he merely offers bald assertions that the trial court abused its discretion because Detective Serfass is named as a defendant in the civil proceedings. As explained above, mere allegations of a conflict of interest are insufficient to require replacement of a district attorney. Accordingly, Cartalemi's third issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/15/2024